# CHARLESTON.

STATE *ex rel.* O. EMERSON CAMPE *v.* BOARD OF EDUCATION OF LOUDON DISTRICT, KANAWHA COUNTY, *et al.*

Submitted August 29, 1923.     Decided August 30, 1923.

1. SCHOOLS AND SCHOOL DISTRICTS—*Contract by Board of Education Prior to Commencement of School Year, for Employment of Teacher, Held Valid.*

    The school year begins on July first of each calendar year and ends on June thirtieth following. Under section 57, chapter 45, Code, a contract made by a board of education, prior to July first, for the employment of a teacher for the ensuing school year, is not void because it may be made in anticipation of the school levy for that school year; nor because when made, there may be uncertainty as to what amount of moneys the board will have at its disposal for the discharge of such contract, unless the obligation of the contract requires the expenditure of moneys in excess of the amount which will be legally at its disposal for that purpose during the school year in which the service is to be performed; nor because made by officers of the board whose terms would expire before the beginning of the ensuing school year. (p. 409).

2. SAME—*Board of Education Continuing Corporate Body; Contracts of Board of Education, If Valid When Made, Binding, Though Succeeding Officers Attempt to Nullify Them.*

    A board of education is a continuing corporate body; it does not change with changes in its members. Its contracts, once made by its officers, if valid when made, are binding upon the corporation, though its succeeding officers disapprove of and attempt to nullify them. (p. 412).

Petition for mandamus by the State, on the relation of O. Emerson Campe, against the Board of Education of Loudon District, Kanawha County, and others.

*Peremptory writ awarded.*

*Harold A. Ritz* and *Lively & Stambaugh,* for relator.
*Elmer L. Stone,* for respondents.

MEREDITH, JUDGE:

The petitioner, in June, 1923, was employed by the Board of Education of Loudon District, Kanawha County, as principal of the public schools at Kanawha City for the ensuing school year, and a written contract therefor was duly executed. On July 1, 1923 the personnel of the board changed; a new president and a new member, who were elected at the last preceding general election, took their places upon the board and succeeded those whose terms had expired. The new board as thus constituted, refused to recognize the validity of the contract of employment of petitioner made by the old board; hence petitioner's application to this court to compel the respondents to recognize him as principal of the schools in question and the contract as binding upon the new board.

While some collateral questions have been raised, we do not deem them important. It is conceded by counsel for both parties that there is but one material question in the case, and that is whether a contract for the employment of a teacher by a board of education, made before July first, for the ensuing school year is valid. The school year begins on July first, and ends on June 30th of the year following. It is contended by counsel for respondents that no contract of employment of a teacher for the school year can be made until after the school year in which the service is to be rendered has begun, hence they say the contract must be made on or after the first of July.

Prior to the adoption of the present school code, chapter 2, Acts 1919, under the general school law, teachers could not be employed until after the beginning of the school year. The date of their employment by trustees was fixed on the third Monday of July, Barnes' Code, 1918, ch. 45, §56. Since then very material changes have been made in the school laws. In 1919 the legislature adopted a school code drawn by the school code commission, which comprehensively and thoroughly revised the school laws. Some minor changes have been made by succeeding legislatures, but in effect, the general revision

stands.   One material change made in the old law is that a
board of education may, but is not required to, appoint
trustees for each sub-district; the board now may forego its
right to appoint school trustees, and may exercise direct man-
agement of all the schools in its district.   Under the old law,
the trustees were required to employ teachers on the third
Monday in July; under the revised school code, if the board
appoints trustees for a sub-district, the trustees are still re-
quired to employ teachers for their school on the third Mon-
day of July, or as soon thereafter as practicable.   Barnes'
Code, 1923, ch. 45, §53.   But under the revised laws, the board
itself may employ teachers; it is not required to appoint trus-
tees and indeed boards now seldom do so.   They themselves
enter into all contracts with teachers and discharge their
other duties without appointing trustees to perform them.   If
the board itself exercises the power of appointing teachers,
when may it do so?   Section 57, chapter 45, Barnes' Code,
1923, furnishes the answer.   It reads:

> "The board of education shall *on or before* the first
> Monday in July in each year, if practicable, appoint
> the principals and teachers for all the schools in the
> district and shall fix their salaries as provided by sec-
> tion fifty-five of this act."

The statute quoted seems to be so plain that interpretation
could not make it plainer.   But counsel for respondents un-
dertake the task and urge a number of reasons why the statute
does not mean what it says.   One of these is that the expres-
sion "in each year" means in "each school year," and not
"in each calendar year"; therefore, in order to employ teach-
ers in "each school year" the contract must be made on or
after, and not before, July first.   But they have overlooked
section 14, chapter 13, Code, which says: "In a statute the
word 'month' shall mean a calendar month, and the word
'year' a calendar year."   This is a sufficient answer to this
contention.   Another reason is found, so they say, in section
55, chapter 45, of the Code.   They insist that the expression
in that section "Commencing with the school year, beginning
the first day of July, one thusand nine hundred and twenty-

one, boards of education shall fix the rates of salary to be paid teachers in accordance with the following classifications and requirements,'' read in connection with section 57, which provides that the board at the time of contracting with teachers ''shall fix their salaries as provided in section 55 of this act,'' clinches their argument that the salary must be fixed and the contract made on or after July first. But not so. Section 55 for the first time provided for a comprehensive schedule of salaries, based upon educational qualifications and experience in school work; that provision did not go into operation until July 1, 1921. It has no reference whatever to the time when boards shall make their contracts with teachers, but merely provides a schedule of salaries and the time that the schedule will become operative; after it should go into operation, that is, July 1, 1921, then the boards should be governed by that schedule as a minimum basis in employing teachers.

Another objection is that to permit a board of education to enter into contracts with teachers before July 1st, for their services for the ensuing school year enables it to incur a debt or to make a contract that would involve the expenditure of moneys in excess of funds legally at its disposal, and therefore violate section 12, chapter 28A of the Code; in other words, it is urged that the board can not by reason of the last mentioned statute make contracts in anticipation of a future levy. The spirit of that section does forbid it, but the legislature had the right to amend it or to pass subsequent laws inconsistent with it and to permit a board of education to make contracts before the beginning of the school year in anticipation of the levy for that year. That is exactly what it has done. Section 57, chapter 45, Code, was enacted after the adoption of section 12, chapter 28-A, and insofar as they are inconsistent, section 57 must prevail.

Respondents say that prior to July first, the board can not tell with any certainty what the assessed valuations of the property in the school district will be for the ensuing school year, hence it can not before that date determine what amount of money will be produced by the maximum or any other levy. That is probably true. Neither can it always know on July 1st, what these valuations will be. Yet according to this

theory, while a teacher's contract made June 30th would be void, because the board could not possibly know the amount of money which would be at its disposal during the ensuing school year, yet a like contract made on July 1st would be valid, though the board would have no more information on that day than on the day preceding. It is admitted by counsel for respondents that a board may contract with teachers if the contracts are made on or after July first, yet the valuations of property in the school district are not required to be certified to the board by the assessor before the second Tuesday in August. Barnes' Code, ch. 45, sec. 72. It is on that date that the board is required to meet and make its estimates for the school year, and the levy is to be laid on the fourth Tuesday of August. Barnes' Code, ch. 28-A, sec. 5, hence it is seen that definite information is not furnished to the board, so that it can with absolute certainty know the amount of money that will be at its disposal until the second Tuesday in August, so if respondents' objection on this ground to a contract made prior to July 1st be valid, then in like manner the same objection to a contract made at any time before the second Tuesday in August would be valid. We do not mean to say that a board of education may, either before July 1st or after that date, enter into a contract with one or more teachers that will obligate the board to pay out moneys in excess of the teachers' fund which will legally be at its disposal during the school year in which the service is performed; but merely because there may be some uncertainty when the contract is made as to what the amount of the teachers' fund will be does not render the contract invalid. It does not appear that there will not be sufficient funds at the disposal of the board to pay petitioner's salary.

The real objection to the making of contracts with teachers prior to July 1st is not that the amount necessary to pay their salaries will exceed the teachers' fund, but that these contracts were made by the old board, and the new board claims that right. They claim it is unfair to the new president and the new member that they should be required to carry out contracts which they did not help make; but the contracts made are corporate contracts, not the contracts of the individuals who then constituted the board. The board by statute

is a corporation; it is a continuing corporate body.  Its members may change, but the corporation does not change.  The corporation in July is the same as it was in the preceding June.  True, the new officers may not like the contracts made through the old officers, but that does not affect the validity of the contracts.  They will have the like privilege of making contracts near the close of their terms, which they can pass on to their successors.

But we think the legislature deliberately and with forethought changed the time for the hiring of teachers from the third Monday of July to "on or before the first Monday in July in each year, if practicable" for very sound reasons.  Under the old law valid contracts with teachers could not be made before the third Monday in July.  This worked great hardship on both teachers and schools; on the teachers, because of the great uncertainty in their employment, as to place, length of term and salary; on the schools, because of the uncertainty as to who would be the teachers.  This situation was met by teachers making tentative agreements with the school officers, some teachers making many such agreements with as many different boards of trustees for teaching as many different schools; but none of the agreements were binding and could not be made so until the third Monday in July.  Many of these agreements were not kept and there was no way to enforce them; great embarrassment and dissatisfaction resulted.  To avoid this uncertainty, and to enable boards to make binding contracts with teachers near the close of their school term, so they might secure competent teachers for the next school year, and before their teachers should make tentative agreements for employment elsewhere, the legislature changed the law so that teachers' contracts might be executed on or before July first of each year.  The legislature declared this policy to be a wise one, and we have no doubt that it is; but whether so or not, we but declare the law.  The legislature made it and until it changes it, it must so stand.

*Peremptory writ awarded.*