E. R. DORSEY *et al. v.* THE BOARD OF EDUCATION OF WAYNE COUNTY, *a corporation*

(No. 7787)

Submitted September 20, 1933.    Decided October 3, 1933.

*Lee, Blessing & Steed,* for plaintiffs in error.

*J. Floyd Harrison* and *James Damron,* for defendant in error.

HATCHER, JUDGE:

This writ of error involves the validity of the appointments of six school teachers for the school year of 1933-4 by a district board of education in Wayne County. The appointments were made, and contracts pursuant thereto (definite as to terms and salaries) were executed, during the first week in January, 1933. The county board of education (successor of the district board under the County Unit Bill which became effective on May 22, 1933) refused to recognize the appointments. The circuit court, on mandamus, refused to require such recognition, holding that the constitutional amendment of 1932, limiting levies for taxation, indirectly annulled the rights of boards of education to enter into such contracts.

Counsel for the teachers contend that the contracts are valid under Code 1931, 18-7-1, which provides as follows:

"The Board of Education shall, on or before the first Monday in July in each year, if practicable, appoint the principal and teachers for all the schools in the district and fix their salaries as provided by section 2 of this article." Section 2 fixes the basic and the advanced salaries for teachers in the several grades, etc., and requires the salaries to be uniform. July 1st is the beginning of the fiscal year for the several levying bodies. Section 1 (above) makes an exception in favor of the boards of education to the statute (11-8-13) which forbids a fiscal body to make a contract involving the expenditure of money in excess of funds legally at its disposal.

The validity of such appointments made prior to July under section 1 was upheld in *Campe* v. *Board of Education*, 94 W. Va. 408, 118 S. E. 877 (decided in 1923), the court specifying that the contracts were not void (a) because made in anticipation of the current school levy or (b) because of uncertainty when made of the sum of money later to be at the disposal of the board. At the time of the *Campe* decision, and until the 1932 constitutional amendment intervened, there was no practical uncertainty as to the money to be at the disposal of the board, because there was no effective limitation, constitutional or legislative, on the levy for the teachers' fund. See Constitution, Article X, section 7, and Code 1931, 11-8-5 (third paragraph subsection b). After appointing teachers, a board of education then could lay a levy sufficient to produce their salaries. As the right to levy must now be exercised within the discretionary legislative apportionment of the limited levies to education (as contemplated by the amendment), we are of opinion that the *Campe* case does not apply to the present situation.

It will be observed that section 1, *supra*, does not confer on the board the absolute right of appointment prior to July, but that such appointment can be made "if practicable". The phrase "if practicable" must be given due consideration, and when that is done, it completely circumscribes the right of appointment. The phrase was not considered in the *Campe* decision, because there was no question then of the practicability of appointments. As heretofore shown, the board was potentially able then to fulfill its contracts with teachers.

That potentiality was suspended by the constitutional amendment. Consequently, we must now consider whether it was practicable under the statute for the board without that potentiality to make the instant appointments.

Four factors control the sum available for the support of free schools in 1933-4 under the changes wrought by the constitutional amendment, namely: (1) The constitutional limitation on levies; (2) the legislative apportionment of the levies to education (made on March 11, 1933); (3) the total valuation of all property listed for taxation (completed about July 31, 1933); (4) and whatever aid the state shall contribute. The first of these factors the board knew in January, 1933, (when the appointments were made), but it could not divine the other three at that time. Without such foreknowledge, it could not possibly know that it could pay to all other teachers in the respective classes of the petitioners herein, the same salaries which it then contracted to pay to them and so maintain the uniformity required by law. The uncertainty of the board at that time as to the money to become available, could no longer be made certain by the voluntary action of the board itself, as could have been done prior to the amendment. A promise is practicable when made only if the promisor is actually or potentially able then to fulfill lawfully his undertaking. It must be apparent that the undertaking can be accomplished by available means. *Wilcox* v. *Royal Arcanum*, 123 N. Y. Supp. 83. The board of education had not the lawful power actual or potential to fulfill the contracts it made in January, 1933; therefore they are impracticable under the statute, and invalid.

Our observations so far have been based specifically on the monetary uncertainty which confronted the board in January, 1933. There were some general conditions then arising from the amendment which are equally pertinent on the question of whether such appointments were practicable. Radical retrenchment in both salaries and the number of teachers was imminent in order to bring school expenses within the limited levies. We take judicial knowledge that in the winter of 1933 there was great popular agitation over changes impending the school system. There was no certainty in the outcome of that agitation. Until definite legislative

action was taken thereon, a board could not plan intelligently to meet the emergency. It was not feasible before such action that a hurried effort should have been made to assure the retention of certain teachers at fixed salaries, irrespective of the readjustment necessary and without thought of how such retention might affect the ultimate school plan.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*