359 S.E.2d 606

**STATE of West Virginia ex rel. Thomas Michael JONES, et al.**

v.

**BOARD OF EDUCATION OF RITCHIE COUNTY.**

No. 17429.

Supreme Court of Appeals of West Virginia.

July 22, 1987.

George E. Lantz, Parkersburg, for appellees.

C. David Morrison, J. Greg Goodykoontz, Steptoe & Johnson, Clarksburg, for appellant.

PER CURIAM:

This is an appeal brought by the Ritchie County Board of Education (hereinafter "the Board") from an order of the Circuit Court of Ritchie County, entered August 29, 1986, which granted a writ of mandamus to prevent the Board from implementing an amendment to the county's Comprehensive Educational Facilities Plan which would have required the consolidation and closing of certain county schools. The lower court concluded that the Board failed to follow the proper statutory procedure for approval of the amendment. We disagree,

and we reverse the judgment of the circuit court.

In January 1985, the Board and the Ritchie County Superintendent of Schools began reviewing the county's instructional program in order to determine how best to implement the requirements of West Virginia Board of Education Policy No. 2510, establishing minimum standards for quality education in the public schools. After consulting with school administrators and representatives of local parent-teacher organizations, the Board and the Superintendent decided that the requirements of Policy No. 2510 might be best satisfied by reorganizing the structure of the county school system and developed four alternative proposals for school consolidations and/or closings. These proposals were initially presented to the public at a community meeting conducted on March 8, 1985.

At a regular Board meeting held on March 11, 1985, the Superintendent explained Policy No. 2510 and presented a general overview of the alternative reorganization proposals. The meeting was open to the public and was attended by a number of interested citizens. After a discussion of the reorganization proposals, a majority of the Board approved a plan which provided for one consolidated high school at Harrisville, middle schools at Cairo and Pennsboro, and elementary schools at Cairo, Ellenboro, Pennsboro, Smithville and Harrisville. In addition, the plan called for the Pullman early childhood education center and the Auburn multi-grade one-room school to be used as needed.

At a regular Board meeting held on March 28, 1985, a number of citizens expressed opposition to the reorganization plan and questioned the Board and the Superintendent as to the services to be provided in the reorganized schools. On April 8, 1985, the appellees herein, citizens, voters, residents and taxpayers of Ritchie County, instituted mandamus proceedings in the Circuit Court of Ritchie County seeking to compel the Board to set aside the reorganization plan.

On April 16, 1985, the Board conducted a special public meeting to vote on amending the county's Comprehensive Educational Facilities Plan (CEFP)[1] to conform to the reorganization proposal approved by the Board on March 11, 1985. A large number of people appeared at the meeting and spoke against the proposal. A majority of the Board, however, voted to proceed with the CEFP amendment and directed the Superintendent to institute the necessary procedures for its approval by the West Virginia Board of Education (hereinafter "the State Board").

On April 25, 1985, a written statement of the Board's reasons and supporting data for the consolidation proposal was filed in the Superintendent's office and made available to the public. A public hearing was advertised and set for May 21, 1985. At the hearing, opportunity was afforded citizens to speak, submit statements and question the Board and the Superintendent.

At a special meeting conducted on May 30, 1985, the Board voted to revise the reorganization plan to provide for an additional middle school at Harrisville and for continuation of the Pullman and Auburn schools. After receiving conflicting reports from the State Superintendent of Schools as to whether these revisions would be accepted, however, the Board held another special meeting on June 6, 1985 and voted to rescind its action of May 30, 1985. The final CEFP amendment submitted to the State Board conformed to the reorganization plan ratified by the Board on March 11, 1985 except insofar as it provided for the continuation of the Auburn school and the closing of the Pullman school.

On June 29, 1985, the State Board unanimously approved the Ritchie County CEFP amendment on condition that the Board implement certain improvements to specified school facilities and changes in the

1. West Virginia Board of Education regulations required each county board of education to develop and submit for approval a Comprehensive Educational Facilities Plan detailing plans for constructing or altering county school facilities. *See* Policy No. 6220, *Policies, Rules and Regulations of the West Virginia Board of Education* [approved July 17, 1973 and May 10, 1974].

proposed curriculum and transportation system to bring the consolidation plan within State Board standards. At about the same time, the parties to this action apparently agreed to postpone indefinitely any hearing on the appellees' mandamus petition pending an evaluation of the State Board's ruling.

In the spring of 1986, a team of experts from the State Board studied the Ritchie County school system and determined that the required improvements had been completed. After a meeting at which proponents and opponents of the reorganization plan were afforded an opportunity to express their views, the State Board, on June 13, 1986, found that the conditions for ratification of the CEFP amendment had been met and approved implementation of the consolidation plan.

On July 2, 1986, the appellees herein filed an amended petition for a writ of mandamus in the Circuit Court of Ritchie County alleging that the Board had failed to comply with the procedures required by West Virginia Code § 18–5–13a (1987 Cum. Supp.) for implementing the reorganization plan and that the plan itself was unworkable, unaffordable and would result in a reduction in the quality of education in the Ritchie County schools. The Board filed an answer denying the allegations. An evidentiary hearing was commenced on July 23, 1986, and the testimony continued until August 15, 1986.

By memorandum order dated August 29, 1986, the circuit court concluded that there was a rational basis for the Board's decision to reorganize the school structure and found no grounds for reviewing the merits of the plan or interfering with the State Board's conclusion that the plan met or exceeded state standards. The court also found, however, that the reorganization plan presented at the public hearing on May 21, 1985 was incomplete and inadequate, as evidenced by the fact that the plan was revised several times thereafter, and ruled that the Board's adoption of the final CEFP amendment was therefore arbitrary and capricious. The court also concluded that the Board had violated the pro-

visions of W.Va.Code § 18–5–13a by revising the reorganization plan without additional notice and further public hearings. On these grounds, the court granted the writ of mandamus prayed for. It is from this order that the Board prosecutes this appeal.

■ At the outset, we note that in this appeal we are not concerned with the wisdom of the Board's decision to reorganize the Ritchie County schools or with the merits of the plan itself. Under W.Va. Code § 18–5–13 (1987 Cum.Supp.), the county boards of education have the authority to close or consolidate county schools, and a decision in that regard is a matter within the sound discretion of the board of education. " '[M]andamus does not lie to control a board of education in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board.' Point 1 Syllabus, *State ex rel. Payne v. Board of Education of Jefferson County*, 135 W.Va. 349 [63 S.E.2d 579 (1951) ]." Syllabus point 5, *State ex rel. Withers v. Board of Education*, 153 W.Va. 867, 172 S.E.2d 796 (1970).

There is ample evidence in the record before this Court to support the conclusion that reorganization was an acceptable means of effectuating State Board policy and that the plan, as approved, met or exceeded state standards. Although the appellees still dispute whether consolidation will improve the quality of education in the Ritchie County schools, neither we nor the circuit court can substitute our judgment on this issue for that of the professional educators and administrators charged with the promulgation and implementation of state educational policy. *See Dillon v. Board of Education*, 171 W.Va. 631, 301 S.E.2d 588 (1983); *Fox v. Board of Education*, 160 W.Va. 668, 236 S.E.2d 243 (1977).

Rather, the key question in this appeal is whether the Board failed to follow the proper procedures for implementing its decision to reorganize the structure of the Ritchie County school system. "The [coun-

ty] board of education ... is a corporation created by statute, with functions of a public nature expressly given, and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and *in no other mode than that presented or authorized by statute."* (Emphasis added). Syllabus point 4, in part, *Shinn v. Board of Education*, 39 W.Va. 497, 20 S.E. 604 (1894). *See also Bailey v. Truby*, 174 W.Va. 8, 321 S.E.2d 302 (1984).

The relevant statute, W.Va.Code § 18–5–13a, provides, in pertinent part:

[P]rior to any final decision of a county board of education on any proposal to close or consolidate any school, the county board of education shall:

(1) Prepare and reduce to writing its reasons and supporting data regarding such school closing or consolidation. The written reasons required under this section shall be available for public inspection in the office of the county school superintendent during the four successive weeks before the date of the public hearing required by this section; and

(2) Provide for a public hearing, notice of which shall be advertised by publication in a newspaper of general circulation in the locality of the affected school at least once a week for four successive weeks prior to the date of the hearing. The notice shall contain the time and place of the hearing and the proposed action of the school board. A copy of such notice shall be posted at the affected school in conspicuous working places for all professional and service personnel to observe, and such notice shall remain posted for four successive weeks prior to the date of the required public hearing. At least a quorum of the school board members and the county superintendent from the county wherein the affected school is located shall attend and be present at the public hearing. Members of the public shall have the right to be present, to submit statements and testimony, and to question county school officials at the public hearing.

The obvious intent of the statute is to insure that the public is aware of and has an opportunity to contribute to the county board's decision regarding consolidating or closing schools.

It appears to this Court that the Board in this case complied with both the requirements and the spirit of the statute. The proposed consolidation plan was developed with the input of professional educators, school administrators and parents and was discussed at at least three Board meetings open to the public prior to the institution of the W.Va.Code § 18–5–13a procedures.[2] The Board then filed a written statement of its reasons and supporting data for the consolidation plan in the Superintendent's office for the period of time required by the statute. This information, which was available for public inspection, included a summary of the procedure followed by the Board to that time and detailed outlines of proposed course offerings, staffing and accreditation projections, proposed school bus routes, school attendance zones and anticipated facility renovations and additions.[3] As mandated by the statute, a public hearing was properly advertised and conducted, and ample opportunity was afforded interested persons to express their views on the proposed action of the Board.

The circuit court, however, concluded that the Board had failed to comply with the statute because the final plan approved by the State Board differed from the plan presented at the public hearing. The court found that the determination as to which student populations would be merged with other school populations at particular schools was indefinite in several respects and was not finally resolved until long after the public hearing. In addition, the

**2.** The statute did not take effect until April 13, 1985.

**3.** State Board Policy No. 6200 specifies the supporting data which must accompany the county board's written statement of reasons for its proposal to close or consolidate schools. However, since these regulations were not promulgated until August 9, 1985, the Board here was not required to comply with them. *State ex rel. Bowlick v. Board of Education*, 176 W.Va. 524, 345 S.E.2d 824 (1986).

final proposal was revised at the insistence of the State Board to bring the consolidation plan in line with state standards. In essence, the court concluded that the Board abused its discretion in approving and seeking to implement the revised plan without providing for further public hearings in accordance with W.Va.Code § 18–5–13a.

■ We disagree with the circuit court's rather narrow interpretation of W.Va.Code § 18–5–13a. The statute does not require public approval of a school board's proposal to close or consolidate schools. Rather, as we have already noted, it is intended to insure that, prior to the rendering of a final decision on such a proposal, the public will be aware of and have an opportunity to comment upon it. However, public input is only one factor to be considered by the county board in reaching its decision, and the statute is satisfied when the interested parties are given an adequate opportunity to participate in the public discussion and to express their views. *See Cortese v. School Board of Palm Beach County*, 425 So.2d 554 (Fla.App.1983); *Keeler v. Iowa State Board of Public Instruction*, 331 N.W.2d 110 (Iowa 1983); *Kelly v. Independent School Dist. No. 623*, 380 N.W.2d 833 (Minn.App.1986); *Moberg v. Independent School Dist. No. 281*, 336 N.W.2d 510 (Minn.1983).

■ Moreover, we do not believe that the statute requires the county board to resubmit the plan to public scrutiny simply because, following the public hearing, changes are made in the details of its implementation. Obviously, the decision to close or consolidate schools must be an informed one, and lack of inquiry into the facts necessary to form an intelligent judgment constitutes an abuse of discretion on the part of a board of education. *See Sigmon v. Board of Education*, 174 W.Va. 210, 324 S.E.2d 352 (1984). *See also Zebra v. School District of the City of Pittsburgh*, 449 Pa. 432, 296 A.2d 748 (1972). The decision as to how the proposal is to be implemented, however, must ultimately rest in the sound discretion of the board. As one court has stated:

[A] school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion. This process leading up to the actual exercise of discretion cannot be unending. To demand such an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time after which a school board is entitled to arrive at a decision and thereafter enter into an executory stage, without being stymied at every turn by the differences of opinions of others.

*Allen v. Uniontown Area School Dist.*, 4 Pa.Cmwlth. 183, 188, 285 A.2d 543, 546 (1971). To hold that a county board of education cannot make revisions in such routine administrative matters as curriculum modification and bus routes without reinstituting the public hearing process would result in an onerous, and very probably impossible, procedural burden which would effectively nullify the board's power to exercise its discretion to act in the interests of public education.

The evidence here indicates that the Board acted studiously and responsibly in developing its reorganization plan. The public was given adequate notice of and an ample opportunity to comment upon the Board's proposal. The subsequent revisions to the consolidation plan were not so substantial as to warrant the conclusion that the Board initially acted upon incomplete and inadequate information. In these circumstances, we must conclude that the Board satisfied the requirements of the statute and was not required to conduct further public hearings prior to implementation of its reorganization plan.

Accordingly, and for the reasons stated herein, we conclude that the circuit court erred in holding that the Board acted arbitrarily and capriciously and under a misapprehension of the law when it sought to implement the reorganization plan approved by the State Board without first providing additional notice and further public hearings in accordance with W.Va.Code § 18–5–13a. The judgment of the Circuit Court of Ritchie County is reversed, and

the writ of mandamus previously issued is hereby discharged.

Judgment reversed; writ discharged.