383 S.E.2d 67

**Beverly HAYNES**

v.

**BOARD OF EDUCATION OF the COUNTY OF KANAWHA.**

**No. 19087.**

Supreme Court of Appeals of West Virginia.

July 13, 1989.

Gregory W. Bailey, Staff Atty., Kanawha County Schools, Charleston, for Bd. of Educ.

Richard A. Robb, Charleston, for Haynes.

WORKMAN, Justice:

This case is before the Court upon the appeal[1] of the Kanawha County Board of Education (hereinafter called Board) filed in this Court on May 4, 1989. It arises from the April 21, 1989, final order of the Kanawha County Circuit Court which granted a writ of mandamus compelling the Board to conduct a second public hearing and to conduct a second vote under the provisions of *W.Va.Code* §§ 18–5–13 [1988] and 18–5–13a [1985], prior to the closure of Loudendale Elementary School. Based upon the lower court's decision, the appellants now argue two assignments of error: (1) the lower court erred in its holding that *Code*, 18–5–13a restricted the legal capacity to vote on the question of whether to close Loudendale Elementary School to those members of the Board who attended the public hearing conducted pursuant to said statute; and (2) the lower court erred in its holding that *Code*, 18–5–13 and *Code*, 18–5–13a prohibited the Board from legally voting to close Loudendale Elementary School on February 2, 1989, because such vote was not taken prior to the first Monday in April next following the public hearing which occurred on March 8, 1988. We find that the writ of mandamus was improperly issued by the lower court and reverse.

On March 8, 1988, a public hearing was conducted by the Board concerning the closure of Loudendale Elementary School. A quorum of the Board members were present at that public hearing.[2] On April 21, 1988, the Board voted unanimously to table any action concerning the recommended closure of Loudendale Elementary School. The closure issue was to be returned to the administration for further study. The actual vote to close Loudendale Elementary School did not take place until February 2, 1989. The closure was to become effective at the beginning of the 1989–90 school year.[3]

It should be understood at the outset that the wisdom or correctness of the board's decision to close the school is not an issue before this Court. *Code*, 18–5–13(3) and *Code*, 18–5–13(4) unquestionably reposes in the Board the authority to close and consolidate schools when it deems necessary. Further, " '[m]andamus does not lie to control a board of education in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board.' Point 1 Syllabus, *State ex rel. Payne v. Board of Education of Jefferson County*, 135 W.Va. 349 [, 63 S.E.2d 579 (1951)]." Syl. Pt. 5, *State ex rel. Withers v. Board of Education*, 153 W.Va. 867, 172 S.E.2d 796 (1970). The focus of this appeal, therefore, is whether the Board, in its decision to close Loudendale, followed the proper procedures as set out in the *West Virginia Code* and the West Virginia Board of Education, *Handbook on Planning School Facilities* (1987 rev. ed.).

---

1. Filed in connection with this appeal was a motion by the appellee, Beverly Haynes, asking that The Honorable W.T. Brotherton, Jr., Chief Justice, recuse himself from participation in any decision related to this case. Upon due consideration, said motion was denied.

2. The Board members in attendance at the hearing consisted of W. Stuart Calwell, Jr., Matthew M. Kinsolving, Deatra L. Markham and Martha L. Wood. Board member Robert Fred Radabaugh was not in attendance. Superintendent Richard Trumble was also present.

3. The Board members who voted to close Loudendale were: Matthew M. Kinsolving, Robert Fred Radabaugh, Wayne Crowder, John Luoni and Deatra Markham. Superintendent Richard Trumble was also present at the meeting.

Prior to the final decision of a Board to close a school, *Code,* 18–5–13a provides, in part, that

> [t]he county board of education shall:
> ...
>
> (2) Provide for a public hearing, notice of which shall be advertised by publication in a newspaper of general circulation in the locality of the affected school at least once a week for four successive weeks prior to the date of the hearing. The notice shall contain the time and place of the hearing and the proposed action of the school board. A copy of such notice shall be posted at the affected school in conspicuous working places for all professional and service personnel to observe, and such notice shall remain posted for four successive weeks prior to the date of the required public hearing. *At least a quorum of the school board members and the county superintendent from the county wherein the affected school is located shall attend and be present at the public hearing.* Members of the public shall have the right to be present, to submit statements and testimony, and to question county school officials at the public hearing.
>
> Any such proposal to close or consolidate any school by any county board of education shall be further subject to any current rules and regulations [4] of the state board of education relating to school closing or consolidation....

(emphasis added)

■ There is no dispute that the Board complied properly with the procedures regarding the notice of the public hearing and the manner in which the public hearing was conducted. What was contested before the lower court and now before this Court is whether the members of the Board entitled to vote on the closure of a school subsequent to a public hearing are limited to the members who participated in and constituted the quorum at the public hearing. If such a restriction would apply, then a quorum would not have been available for the vote on closure which took place in February, 1989, due to the changes of the membership of the Board. However, we find no basis for such a restriction and therefore disagree with the lower court's imposition of such a restriction. Neither the code nor the *Handbook on Planning School Facilities* suggests or mandates that *only* those members who constitute the quorum for the purposes of the public hearing may vote on the closure issue. *See Code,* 18–5–13 and *Code,* 18–5–13a; *Handbook on Planning School Facilities* § 105.07.

■ The reasons that no such restriction is found are twofold. First, the Board is a statutorily created corporation.[5] Since the corporation is a continuing legal entity,

---

4. *Handbook on Planning School Facilities* § 105.07 provides that:

Pursuant to West Virginia Code 18–5–13 and 18–5–13a, county boards of education must do the following by the first Monday in April:
1. Counties shall hold a public hearing, notice of which shall be advertised by publication in a newspaper in general circulation in the locality of the affected school at least once per week for four successive weeks prior to the date of the hearing. The notice shall contain:
   A. Time and place of the hearing.
   B. Proposed action of the board of education.
2. All counties must have the written reasons and supporting data regarding the proposed school closings or consolidations in the office of the county superintendent during the four consecutive weeks prior to the public hearing.
3. A copy of the notice of public hearing must also be posted in the school targeted for closure or consolidation in conspicuous working places for all professional and service personnel to observe and shall remain posted for four successive weeks.
4. At least a quorum of the school board members and the county superintendent from the county wherein the affected school is located shall attend and be present at the public hearing.
5. During the public hearing, members of the public shall have the right to be present, submit statements and testimony in their behalf and question county school officials.
6. After provisions of one through five above have been completed, county boards of education must take a formal vote on the school closure or consolidation issue.

5. *W.Va.Code* § 18–5–5 [1933] specifically states that "[t]he county board of education shall be a corporation...."

"[i]ts members may change, but the corporation does not change." *State ex rel. Campe v. Board of Education,* 94 W.Va. 408, 118 S.E. 877, 879 (1923); *See also State ex rel. Jones v. Board of Education,* 178 W.Va. 378, 380–81, 359 S.E.2d 606, 608–09 (1987); Syl. Pt. 1, *Evans v. Hutchinson,* 158 W.Va. 359, 359, 214 S.E.2d 453, 455 (1975). Therefore, the activities that the members of the Board undertake, such as conducting a public hearing, do not become null and void just because the membership changes, for those activities were conducted by the members on behalf of the Board as a continuing corporate entity. The Board can act upon a public hearing in which former members participated. Second, *Code,* 18–5–13a "does not require public approval of a school board's proposal to close or consolidate schools. Rather, ... it is intended to insure that, prior to the rendering of a final decision on such proposal, the public will be aware of and have an opportunity to comment upon it." *Jones,* 178 W.Va. at 382, 359 S.E.2d at 610. The intent of the legislature in enacting the statute was clearly met in this case.

We also do not agree that the lower court was correct in finding that both the public hearing and the vote on the closure of a school must take place prior to the next first Monday in April following the date of the public hearing. *Code,* 18–5–13 gives the Board the authority "[t]o close any school which is unnecessary and to assign the pupils thereof to other schools: Provided, [t]hat such closing shall be officially acted upon and teachers and service personnel involved notified on or before the first Monday in April...." [6] Neither the code provision, nor the regulation specifies that the vote must be taken "on or before the first Monday in April" immediately following the date the public hearing was held. Although there is some merit to the appellee's argument that if the vote is not taken on the first Monday in April following the public hearing, then situations could arise where a vote is delayed by a board of education for years after a public hearing, that is not the situation in the case at hand. If such a situation were to arise, then at some point in time the board's action would be considered arbitrary and capricious, and a writ of mandamus might be proper.

In the present case, a vote was taken on the closure of Loudendale Elementary School on April 21, 1988. That vote was to table the action. Then, within a year, another vote was taken on February 2, 1989. This was prior to the first Monday in April, 1989. That vote was to close Loudendale Elementary School.

Accordingly, and for the reasons stated herein, we conclude that the circuit court erred in holding that the Board failed to properly follow procedures outlined in *Code,* 18–5–13 and *Code,* 18–5–13a. The judgment of the Circuit Court of Kanawha County is reversed, and the writ of mandamus previously issued is hereby discharged.

Judgment reversed; Writ discharged.

NEELY, Justice, dissenting:

I respectfully dissent because I believe it is the clear purport of *W.Va.Code,* 18–5–13a [1985] that the members of the Board of Education who constitute the statutorily required quorum at the hearing on a school closing be the same members who vote on whether the school should be closed. The closing of a local school is an intensely emotional issue; although there are many schools that need to be closed or consolidated, communities should have the opportunity to present their side of any school closing issue to the board members *who will ultimately make the decision.* A hearing before a person or group who will *not* make the ultimate decision isn't much of a hearing. The residents of Loudendale might as well have been given a hearing before the cows and the chickens.

Two new members of the board who had not been elected at the time of the hearing and a third member who had not attended the hearing voted to close the school, much

6. *See* corresponding regulation from *Handbook on Planning School Facilities* § 105.07 *supra* n. 4.

to the prejudice of the local residents. Certainly it is the tradition in judicial bodies, preeminently the Supreme Court of the United States, not to decide cases when members of the Court whose votes are necessary to the ultimate decision did not hear the oral arguments. In such circumstances it is traditional for judicial bodies to set the case for reargument because those adversely affected by a decision should have an abiding conviction that the persons making the decision fairly and objectively evaluated their position. This, I believe, is also the intent of the language in *Code*, 18–5–13a [1985].

Furthermore, even if the majority are correct that a school board is an ongoing corporate entity where the persons who hear a matter need not always be *entirely* the same persons who vote on the matter, I still believe that the decision of the Circuit Court of Kanawha County comes within Syllabus Point 1, *State ex rel. Payne v. Board of Education of Jefferson County*, 135 W.Va. 349, 63 S.E.2d 579 (1951) because the actions of the board in this case were "arbitrary conduct." It is one thing to say that not all persons who vote on a matter need to have attended the hearing; it is quite another to say that a *majority* of those who vote on a matter need not have attended the hearing. The *Code*, after all, requires a quorum of board members at the public hearing, *W.Va.Code*, 18–5–13a [1985], and a quorum is defined as a *majority* of the members, *W.Va.Code*, 18–5–4 [1985]. The members of the Board of Education who heard the testimony about the school closing decided to table any action concerning the recommended closure. Thus the quorum of the board *who heard the testimony* concluded that the disadvantages of closure outweighed its advantages. In my estimation, the successful motion to table, combined with ten months of inactivity, constituted a decision by the board *not* to close the school.

According to *Robert's Rules of Order*, on the effect of tabling motions:

> In organizations that hold regular business sessions quarterly or oftener, a question laid on the table remains there until taken from the table or until the close of the next regular session; if not taken up by that time, *the question dies.* In assemblies that do not have regular sessions as often as quarterly, a question laid on the table can remain there only until the end of the current session; and unless taken from the table earlier, *the matter dies* with the close of that session. [Emphasis added.]

H. Robert, *Robert's Rules of Order*, Newly Revised 181–82 (1970). *Robert's* point out that a motion to lay on the table is often misused in place of a motion to postpone indefinitely. *Id.* at 183.

> *Postpone Indefinitely* is a motion that the assembly decline to take a position on the main question. Its adoption kills the main motion (for the duration of the session) and avoids a direct vote on the question.

*Id.* at 105. Regardless of whether the original vote to table the school closing was properly styled, the matter was clearly dead by the time the second vote was taken. It could be introduced afresh in 1989, but not without a new motion and a new public hearing.

Significantly, the second vote came eleven months after the public hearing, and ten months after the tabling vote. *W.Va.Code*, 18–5–1c [1975], requires that each board be *organized* every two years, following elections, in July of even-numbered years. This is analogous to the organization of a separate U.S. Congress every two years, even if the membership is nearly the same. The board organized in July 1986 held the hearing in March 1988 and voted in April 1988 to table the school closing. The new board, organized in July 1988, voted in February 1989 to close the school. Under *W.Va.Code*, 18–5–1c [1975], these were distinct boards. Therefore, the requirement in *W.Va.Code*, 18–5–13a [1985] that *the board* hold a public hearing before *the board* votes to close a school, necessarily refers to one board. The board that held the hearing voted to table the school closing. It was a different board that later voted, without a hearing, to close the school. *Code* sections 18–5–1c [1975] and 18–5–13a [1985] require that the same or-

ganized board hold the hearing and vote on the matter. That was clearly violated in this case.

Accordingly, I would affirm the judgment of the Circuit Court of Kanawha County.