399 S.E.2d 31

The BOARD OF EDUCATION OF
COUNTY OF KANAWHA

v.

The WEST VIRGINIA BOARD OF
EDUCATION.

STATE of West Virginia ex rel.
Thornton COOPER

v.

Henry R. MAROCKIE; the West Virginia State Board of Education; and the Board of Education of the County of Kanawha and Douglas Skaff, Individually, and on Behalf of Concerned Citizens and Parents of the South Charleston Junior High School Attendance Area.

No. 19736.

Supreme Court of Appeals of
West Virginia.

Oct. 11, 1990.

Rehearing Denied Nov. 28, 1990.

Basil R. Legg, Jr., Director of Legal Services, Charleston, for The WV Bd. of Educ. Henry R. Marockie.

Deborah L. McHenry, J. Michael Ranson, Ranson, Ranson & McHenry, Charleston, for Douglas Skaff and Concerned Citizens.

Greg Bailey, William Courtney, Charleston, for Bd. of Educ. of County of Kanawha.

Thornton Cooper, South Charleston, for Thornton Cooper.

MILLER, Justice:

■ This is an appeal from a final order in two cases that were consolidated for hearing in the Circuit Court of Kanawha County. The central issue is whether the West Virginia Board of Education (State Board) is empowered to approve or disapprove a school consolidation and school closure plan adopted by a county board of education under W.Va.Code, 18–5–13a. We conclude that the State Board has such authority, and we reverse the judgment of the circuit court and remand the case for further proceedings.[1]

The underlying facts need not be discussed in great detail. On May 2, 1990, the Board of Education of Kanawha County (County Board) approved that portion of a school consolidation plan which proposed closing South Charleston Junior High School (SCJHS). On May 24, 1990, the State Board considered and rejected a motion to approve the proposed closure.

On June 27, 1990, appellee Thornton Cooper, a taxpayer and resident of the City of South Charleston, instituted a proceeding in prohibition and mandamus in the Circuit Court of Kanawha County against the County Board, the State Board, and Henry R. Marockie, the State Superintendent of Schools. On June 28, 1990, the County Board filed an action for declaratory and injunctive relief against the State Board. Both suits challenged the State Board's authority to approve or disapprove a county board's school closure plan. The two cases were consolidated and heard on July 23, 1990. On August 2, 1990, a motion to intervene was granted to appellant Douglas Skaff, individually and on behalf of Concerned Citizens and Parents of the South Charleston Junior High School Attendance Area.

By order dated August 6, 1990, the circuit court concluded that under W.Va.Code, 18–5–13a, the exclusive authority to close and to consolidate schools was vested in county boards of education and that the State Board had no constitutional or legislative authority to disapprove or overrule such decisions. As a subsidiary point, the circuit court concluded that the State Board's decision not to approve the closure of SCJHS was arbitrary and capricious. The circuit court permanently enjoined the State Board from taking any action to obstruct or otherwise impede the County Board from closing SCJHS. The State Board appealed this order.

We find that the circuit court erred in its legal analysis. We have recognized that under W.Va.Code, 18–5–13,[2] "the county

---

1. Because of the substantial public issue involved and in view of the impending opening of the public schools in Kanawha County, this Court granted an expedited hearing, at which the parties submitted briefs and fully argued their positions. On August 14, 1990, we issued an order which briefly stated the decision of this Court. This opinion follows to explain in more detail the reasons for that decision.

2. W.Va.Code, 18–5–13 (1990), provides, in pertinent part:

"The [county] boards, subject to the provisions of this chapter and the rules and regulations of the state board, shall have authority:

\* \* \* \* \* \*

"(3) To close any school which is unnecessary and to assign the pupils thereof to other schools ...;

boards of education have the authority to close or consolidate county schools, and a decision in that regard is a matter within the sound discretion of the [county] board of education." *State ex rel. Jones v. Board of Educ.*, 178 W.Va. 378, 380, 359 S.E.2d 606, 608 (1987). *See Haynes v. Board of Educ.*, 181 W.Va. 435, 383 S.E.2d 67 (1989). W.Va.Code, 18–5–13, also states, however, that the county board's authority is *"subject to* the provisions of this chapter and *the rules and regulations of the state board."* (Emphasis added). In addition, W.Va.Code, 18–5–13a, which requires county boards to fulfill certain procedural steps prior to a final decision on school closings or consolidations,[3] provides: "Any such proposal to close or consolidate any school by any county board of education shall be further subject to any current rules and regulations of the state board of education relating to school closing or consolidation...."[4]

■ Clearly, the county boards of education do not have unlimited power to make the final decisions with respect to school closings and consolidations. The plain language of W.Va.Code, 18–5–13 and W.Va. Code, 18–5–13a reflects that such decisions may be rejected where they fail to comply with statutory provisions or State Board regulations.

The State Board need not rely entirely on statutory authority, however. Article XII, Section 2 of the West Virginia Constitution provides, in pertinent part: "The general supervision of the free schools of the State shall be vested in the West Virginia board of education which shall perform such duties as may be prescribed by law." Article XII, Section 1 of the Constitution provides: "The legislature shall provide, by general law, for a thorough and efficient system of free schools."

In *Bailey v. Truby*, 174 W.Va. 8, 321 S.E.2d 302 (1984), a county board of education challenged the validity of State Board rules setting the eligibility requirements for student participation in nonacademic extracurricular activities. The county board asserted that W.Va.Code, 18–2–25,

---

"(4) To consolidate schools;

"(5) To close any elementary school whose average daily attendance falls below twenty pupils for two months in succession and send the pupils to other schools in the district or to schools in adjoining districts...."

Although we quote the most recent revision of the statute, previous enactments have contained similar language for over seventy years. *See* 1919 W.Va. Acts, ch. 2, § 58.

3. W.Va.Code, 18–5–13a, provides, in pertinent part:

"In addition to the provisions of section thirteen [§ 18–5–13] of this article, prior to any final decision of a county board of education on any proposal to close or consolidate any school, the county board of education shall:

"(1) Prepare and reduce to writing its reasons and supporting data regarding such school closing or consolidation. The written reasons required under this section shall be available for public inspection in the office of the county school superintendent during the four successive weeks before the date of the public hearing required by this section; and

"(2) Provide for a public hearing, notice of which shall be advertised by publication in a newspaper of general circulation in the locality of the affected school at least once a week for four successive weeks prior to the date of the hearing. The notice shall contain the time and place of the hearing and the proposed

action of the school board. A copy of such notice shall be posted at the affected school in conspicuous working places for all professional and service personnel to observe, and such notice shall remain posted for four successive weeks prior to the date of the required public hearing. At least a quorum of the school board members and the county superintendent from the county wherein the affected school is located shall attend and be present at the public hearing. Members of the public shall have the right to be present, to submit statements and testimony, and to question county school officials at the public hearing."

4. W.Va.Code, 18–5–13a, provides in more detail:

"Any such proposal to close or consolidate any school by any county board of education shall be further subject to any current rules and regulations of the state board of education relating to school closing or consolidation: Provided, That after the effective date of this section [April 13, 1985] the state board shall promulgate rules and regulations which shall prescribe in detail the type of supporting data a county board of education shall include as part of its written statement of reasons required by this section for school closing or consolidation, and which shall include any data required by the state board of education to amend a county's comprehensive educational facilities plan."

which granted county boards "the control, supervision and regulation" of such activities,[5] delegated the power to promulgate such rules exclusively to the county boards. We concluded that the above-cited constitutional provisions charged the State Board with "a duty to ensure that the constitutionally mandated educational goals of quality and equality are achieved." 174 W.Va. at 16, 321 S.E.2d at 310. We also concluded that the State Board's authority to act in furtherance of this constitutional obligation overrode any legislative grant of authority to the county boards:

> "[C]onstitutional grants of authority and the provision of fundamental safeguards cannot be derogated or eliminated by legislative or executive action. Therefore, any statutory provision that interferes with the State Board of Education's 'general supervision of the free schools of the State' under article XII, § 2 of the West Virginia Constitution is void." 174 W.Va. at 18, 321 S.E.2d at 312.

In *Pauley v. Bailey,* 174 W.Va. 167, 324 S.E.2d 128 (1984), we addressed certain issues arising from the *Master Plan for Public Education* developed as a result of this Court's decision in *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979).[6] In *Pauley v. Bailey, supra,* we noted that in addition to its general supervisory powers under the Constitution, the State Board has broad rule-making powers under W.Va. Code, 18–2–5 (1983).[7] In Syllabus Point 1, in part, we stated:

"The West Virginia Board of Education and the State Superintendent of Schools, pursuant to their general supervisory powers over education in West Virginia under *W.Va. Const.* art. XII, § 2, and their specific duties to establish, implement and enforce high quality educational standards for all facets of education under the provisions of Chapter 18 of the West Virginia Code, have a duty to ensure the complete executive delivery and maintenance of a 'thorough and efficient system of free schools' in West Virginia as that system is embodied in *A Master Plan for Public Education* [.]"

Most recently, in *West Virginia Board of Education v. Hechler,* 180 W.Va. 451, 376 S.E.2d 839 (1988), the State Board challenged a legislative limitation on its rule-making authority in the form of a statute requiring the State Board to submit its rules and regulations to a legislative oversight commission for approval. We recognized that by virtue of its constitutional grant of general supervisory powers, the State Board enjoys a special standing in relation to other administrative agencies. We held, in Syllabus Point 2, in part:

> "Rule-making by the State Board of Education is within the meaning of 'general supervision' of state schools pursuant to art. XII, § 2 of the *West Virginia Constitution,* and any statutory provision that interferes with such rule-making is unconstitutional...."

5. W.Va.Code, 18–2–25, provides in pertinent part: "The county boards of education are hereby granted and shall exercise the control, supervision and regulation of all interscholastic athletic events, and other extracurricular activities of the students in public secondary schools, and of said schools of their respective counties."

6. In *Pauley v. Kelly, supra,* we reversed the lower court's dismissal, under W.Va.R.Civ.P. 12(b)(6), of an action in which parents of school children contended that the State had failed to provide a thorough and efficient system of schools as required by W.Va.Const., art. XII, § 1. We set forth guidelines for resolving the issue and remanded the case for further factual development. After further proceedings, the circuit court concluded that the educational system and the financing mechanism then in place were unconstitutional and that the State Board,

among other officers and agencies of the State, was responsible for remedying this inadequacy. As a consequence, the defendants in *Pauley v. Bailey* developed *A Master Plan for Public Education,* "an extensive compilation of detailed concepts and standards that defines the educational role of the various state and local agencies, sets forth specific elements of educational programs, enunciates considerations for educational facilities and proposes changes in the educational financing system." 174 W.Va. at 171, 324 S.E.2d at 132.

7. W.Va.Code, 18–2–5, provides, in pertinent part: "Subject to and in conformity with the constitution and laws of this State, the state board of education shall determine the educational policies of the State and shall make rules for carrying into effect the laws and policies of the State relating to education[.]"

■ Clearly, then, the State Board is empowered to take whatever steps are necessary to fulfill its obligation to achieve "the constitutionally mandated educational goals of quality and equality...." *Bailey v. Truby*, 174 W.Va. at 16, 321 S.E.2d at 310. The closing or consolidation of county schools is a matter within the purview of the State Board's general supervisory powers. Accordingly, in furtherance of its mandatory duty to provide a thorough and efficient system of schools, we conclude that the State Board does have the authority to review and to approve or disapprove a county board's school closure or consolidation plan.

■ The State Board has discretion to reject or amend a school closure or consolidation plan. As we noted in Syllabus Point 1 of *Detch v. Board of Education*, 145 W.Va. 722, 117 S.E.2d 138 (1960):

"The determination of the educational policies of the public schools of the State is vested in The West Virginia Board of Education, and, unless unreasonable or arbitrary, its actions relating to such policies will not be controlled by the courts."

*Quoted with approval in Bailey v. Truby*, 174 W.Va. at 13, 321 S.E.2d at 307–08. Moreover, we stated in *State ex rel. Jones v. Board of Education*, 178 W.Va. at 380, 359 S.E.2d at 608:

"[N]either we nor the circuit court can substitute our judgment on this issue for that of the professional educators and administrators charged with the promulgation and implementation of state educational policy. *See Dillon v. Board of Education*, [171] W.Va. [631], 301 S.E.2d 588 (1983); *Fox v. Board of Education*, 160 W.Va. 668, 236 S.E.2d 243 (1977)."

The State Board's discretion is not unlimited, however. Pursuant to W.Va.Code, 18–5–13a, it has promulgated rules and regulations relating to school closings and consolidations. *Handbook on Planning School Facilities (Policy No. 6200)*, 126 W.Va.C.S.R. § 126–172–1, *et seq.* Section 105.07 of these regulations contains the following provision:

"The West Virginia Board of Education will *not* overrule a county board of education on a school closing or consolidation matter, unless the proposal does not comply with the educational and facility standards established by the State Board or the county board has not complied with procedural requirements of 18–5–13, 18–5–13a, and State Board Policy." (Emphasis in original).

As we have often repeated, "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syllabus Point 1, *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977). *See also* Syllabus Point 5, *DePond v. Gainer*, 177 W.Va. 173, 351 S.E.2d 358 (1986); Syllabus Point 1, *Trimboli v. Board of Educ.*, 163 W.Va. 1, 254 S.E.2d 561 (1979).

From the record before this Court, we cannot say whether the State Board acted arbitrarily or unreasonably in failing to approve the closing of SCJHS. No evidentiary hearings were held on the subject before the circuit court. Indeed, the merits of neither the County Board's or the State Board's decision are supposed to be in issue in this appeal.[8]

■ We do note, however, that the State Board has not made any specific statement as to why it rejected the County Board's plan to close SCJHS. Where the State Board rejects, in whole or in part, a county board's school closure or consolidation plan, it is required to state its reasons for doing so. The State Board need not make detailed findings of fact or conclusions of law, but must give some reason for its action so as to enable a reviewing court to determine if it has abused its discretion.

**8.** In its Petition for Appeal, the State Board asserts that the parties below stipulated that the sole issue to be decided at the hearing before the circuit court was the legal issue concerning the State Board's authority as to school closing and/or consolidation plans. The State Board asserts, however, that at the hearing, appellee Cooper violated this stipulation and offered substantial factual material to the court for a determination on the merits of the school closing decision.

In summary, we hold that the circuit court erred in concluding that the State Board has no authority to review or reject the County Board's closure plan. We further conclude that in view of the lack of an appropriate evidentiary record, the circuit court erred in holding that the State Board acted arbitrarily and capriciously in failing to approve the County Board's decision.[9] The case is remanded to the State Board with instructions to give an appropriate statement of its reasons for not approving the County Board's plan. Afterwards, if the County Board believes that the State Board has acted arbitrarily and capriciously, it may pursue this issue before the circuit court in an evidentiary hearing.

Reversed and remanded with directions.

NEELY, C.J., did not participate in the consideration or decision of this matter.

---

9. We decline to discuss Appellee Cooper's cross-assignment of error because it was not considered below. *See* Syllabus Point 2, *Duquesne* *Light Co. v. State Tax Dep't,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).