No. 17-0767 – *W. Va. Bd. of Educ. et al v. Bd. of Educ. of the Cty. Of Nicholas, W. Va.*

FILED
**October 10, 2017**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, C. J., concurring:

I concur in the majority's opinion in its entirety. It is clear that the West Virginia Board of Education ("WVBOE") is vested with constitutional, statutory, and regulatory authority to exercise its discretion in accepting or rejecting an amended CEFP and/or consolidation plan. The *West Virginia Constitution* and this Court's precedent make plain that

> [t]he West Virginia Board of Education and the State Superintendent of Schools, pursuant to their general supervisory powers over education in West Virginia under W.Va. Const. art. XII, § 2, and their specific duties to establish, implement and enforce high quality educational standards for all facets of education under the provisions of Chapter 18 of the West Virginia Code, have a duty to ensure *the complete executive delivery and maintenance of a "thorough and efficient system of free schools" in West Virginia[.]*

Syl. Pt. 1, in part, *Pauley v. Bailey*, 174 W. Va. 167, 324 S.E.2d 128 (1984) (emphasis added). Unquestionably, the "complete executive delivery and maintenance of a 'thorough and efficient system of free schools'" necessarily entails oversight of and ultimate responsibility for the number, adequacy, and viability of our schools. The WVBOE's constitutional obligation is to *all* students in the State of West Virginia. To fulfill that constitutional obligation, it must not be improperly hamstrung in the exercise of its lawful authority to ensure that individual counties are both effectively serving its

1

student population and operating in accord with the best interests of the State's educational system as a whole.

While this proceeding necessarily required this Court to examine the WVBOE's stated reasons for rejection of the CEFP, our conclusion that its reasoning was neither arbitrary nor unreasonable should not be construed as a tacit endorsement of any plan or solution. Although acknowledged in the majority's opinion, it warrants reiteration that it is not the charge of this Court to wade into the deeply emotional and occasionally political issues that understandably surround school closure and consolidation. Rather, those issues are left exclusively to the respective county and state boards of education to utilize their collective wisdom and experience to determine what best serves their students' needs. Only when a board of education so wholly abdicates its role such as to make its rationale arbitrary and unsupportable, may a court intervene. No such circumstances exist here.

Nevertheless, the parties to and/or observers of this case may well declare a "winner" and "loser." And while the Nicholas County Board of Education may understandably view this decision as defeat, such a viewpoint is short-sighted. What the decision of the WVBOE in rejecting the CEFP amendment suggests, when fairly construed, is simply that there is more work to be done to determine the best solutions for these schools. This is due in no small measure to the commendable success of the Nicholas County schools. According to information for the 2015-16 school year

2

contained in the appendix record, Richwood Middle School had a 100 percent highly qualified teacher rate; Summersville Middle School had a 94.1 percent highly qualified teacher rate; and Richwood High School and Nicholas County High School had a 96.1 percent and 90.1 percent graduation rate, respectively—higher than the statewide graduation rate. Moreover, their dropout rates were considerably lower than the statewide rate. Because all of the schools involved—each individually and as part of the Nicholas County school system—are so successful, the respective boards must proceed with all diligence to ensure that such exemplary success is fostered, rather than jeopardized.

This Court has observed that with respect to school closures and consolidation, "a school board is required to investigate, to inquire, to study, to ponder and to finally decide the question." *State ex rel. Jones v. Bd. of Educ. of Ritchie Cty.*, 178 W. Va. 378, 359 S.E.2d 606 (1987) (quoting *Allen v. Uniontown Area Sch. Dist.*, 285 A.2d 543, 546 (1971)). And while it may not be "stymied at every turn by the differences of opinions of others," a local board must give careful consideration to the innumerable factors bearing on the students' fundamental right to education and the means by which it delivers that fundamental right. *Id*; s*ee also* Syl. Pt. 3, *Pauley v. Kelly*, 162 W. Va. 672, 672, 255 S.E.2d 859, 861 (1979) ("The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State."). While the Nicholas County Board of Education has undertaken thoughtful analysis and

consideration of the consolidation issue, these unique circumstances and the commendable success of these schools have been deemed by the WVBOE, in exercise of its constitutional authority, to require more.

The WVBOE must likewise give commensurate, painstaking deliberation to the issues touching not only the locally affected students, but the system as a whole. The appendix record reflects that its members did precisely what the *West Virginia Constitution* demands of them. Whether the WVBOE's conclusion was right or wrong, even a cursory review of its meeting minutes—and particularly the thorough circuit court testimony—reveals that the WVBOE members individually and as a body carefully reviewed the materials submitted by the Nicholas County Board of Education. As contemplated in its constitutional charge of "general supervision" over the State's schools, its members then applied their collective wisdom and experience to render thoughtful assessment and opinions on the plan. *See* Article XII, section 2 of the *West Virginia Constitution* ("The general supervision of the free schools of the State shall be vested in the West Virginia Board of Education which shall perform such duties as may be prescribed by law.").

As the parties move forward, I trust that they will work cooperatively, diligently, and with alacrity to ensure that the students of Nicholas County receive the educational facilities, programs, and opportunities they deserve and to which they are constitutionally entitled. As a reminder to all citizens of the State— inasmuch as each

4

has a role to play in our educational system—the "thorough and efficient" education to which our children are entitled "develops, as best the state of education expertise allows, the minds, bodies and social morality of its charges to prepare them for useful and happy occupations, recreation and citizenship, and does so economically." *Pauley v. Kelly*, 162 W. Va. 672, 705, 255 S.E.2d 859, 877 (1979). I am confident that the parties' ardently expressed concern for the children's well-being will lead Nicholas County students to precisely that end. Accordingly, I respectfully concur.