HOBART W. HESSE, *et al.*

*v.*

STATE SOIL CONSERVATION COMMITTEE, *et al.*

*and*

HOBART W. HESSE, *et al.*

*v.*

STATE SOIL CONSERVATION COMMITTEE, *et al.*

(No. CC 878)

Submitted April 29, 1969.　　　　Decided June 17, 1969.

*Rogers & Hott, Donald C. Hott,* for plaintiffs.

*Chauncey H. Browning, Jr.,* Attorney General, *Thomas P. O'Brien, Jr.,* Assistant Attorney General, for defendants.

CAPLAN, JUDGE:

This matter is before the Court on certification from the Circuit Court of Mineral County. The plaintiffs, Hobart W. Hesse and Muriel F. Hesse, his wife, are the

owners of a tract of land in Mineral County, containing approximately 202 acres. A small stream known as Whipp's Run flows through their property. Adjacent to and above the Hesse land on Whipp's Run is a 109 acre tract of land owned by the State Soil Conservation Committee. The Committee granted to Potomac Valley Soil Conservation District an easement on its land for the purpose of constructing a flood-prevention dam. A contract was let to National Construction Company for the construction of this dam.

The only access to the site of the dam was over a narrow right of way on the Hesse property which the construction company found inadequate for the moving of heavy equipment necessary for the construction of the dam. Thereafter several conferences were held between counsel for the various parties, the purpose of which was to settle differences, not only pertaining to the right of way, but also as to matters concerning the riparian rights of the Hesses.

Without any indication of their intentions, and without any notice, the Committee and District jointly filed a suit against the Hesses seeking a preliminary injunction to enjoin them from interfering with the use of the right of way by the Committee and District or their agents, servants, contractors or employees. A preliminary injunction was obtained from the judge of an adjoining circuit, even though the judge of the Twenty-first Circuit, which includes Mineral County, was present in said circuit when the application was made. The preliminary injunction was issued as a vacation order of the Circuit Court of Mineral County. No notice was given the Hesses and, it appearing to the court that the plaintiffs were "public body corporates of the State of West Virginia", no bond was required.

While the Hesses were restrained by said injunction, National Construction Company, acting on behalf of the District, widened the narrow right of way to accommodate

heavy equipment, thereby causing considerable damage to the plaintiffs' property, fences and buildings.

The Hesses filed their answer to the action in which the injunction was obtained and the matter was submitted to the Circuit Court of Mineral County for final determination. By order dated September 13, 1966, the court dissolved the injunction awarded by the judge of the adjoining circuit and authorized the Hesses to limit the use of the right of way to the width that had existed prior to the issuance of the preliminary injunction.

The Hesses then instituted the two civil actions with which we are now concerned. One action was instituted to recover for damages to the real estate caused by the widening of the right of way and for costs of obtaining the dissolution of the preliminary injunction. The other action sought to enjoin the State Soil Conservation Committee, the Potomac Valley Soil Conservation District and the National Construction Company from interfering with their lower riparian water rights. It is contended by the plaintiffs that the construction of the flood-prevention dam with a permanent pool upstream from their farm will result in complete blockage of Whipp's Run during certain dry periods of each year.

These actions were consolidated and tried together before the court. By an order dated November 13, 1968 the court granted a motion to dismiss the State Soil Conservation Committee and the said Committee was dismissed as a party defendant in both civil actions. The court denied a motion to dismiss the Potomac Valley Soil Conservation District and said District is continued as a party defendant in both cases. The court then, on its own motion, certified the following questions to this Court:

"1. Under the provisions of West Virginia Constitution, Article VI, Section 35, is the State Soil Conservation Committee, a public body corporate, immune from suit?

"2. If the State Soil Conservation Committee, a public body corporate, is not so immune from suit, must the

venue of a suit against the State Soil Conservation Committee be brought in the Circuit Court of Kanawha County pursuant to the provisions of West Virginia Code, Chapter 14, Article 2, Section 2, or can such suit be maintained in the Circuit Court of the County in which the real estate is located, namely, Mineral County?

"3. Is the Potomac Valley Soil Conservation District, a public body corporate, immune from suit under the provisions of the Constitution of West Virginia, Article VI, Section 35?

"4. If the Potomac Valley Soil Conservation District is not so immune from suit, must such suit be brought against it in the Circuit Court of Kanawha County, West Virginia, under the provisions of West Virginia Code, Chapter 14, Article 2, Section 2, or can such suit be maintained in the Circuit Court of the County in which the real estate is located?

"5. If the answers to either Issue 1 or 3 above is in the affirmative, or the answer to either 2 or 4 is that the venue of such action must be in Kanawha County, are the rights of the plaintiffs under Article III, Section 9, of the Constitution of West Virginia adequately protected by a Writ of Mandamus to require either the State Soil Conservation Committee and/or Potomac Valley Soil Conservation District to institute condemnation of the plaintiffs' property rights in water?

"6. If the answer to Issue 5 above be in the affirmative, against whom may such Mandamus be brought, and what would be the venue thereof?"

The trial court's action in dismissing the State Soil Conservation Committee as a party defendant in each case is not questioned by the plaintiffs. In fact, the plaintiffs seek an affirmance of the court's rulings which would permit them to proceed against the District in the Circuit Court of Mineral County. While the Committee was dismissed, it is not clear whether the ground therefor was its immunity as a state agency or improper venue.

In answering the first certified question it is essential to consider Article VI, Section 35 of the Constitution of West Virginia, the pertinent language of which provides: "The State of West Virginia shall never be made defendant in any court of law or equity * * *." The prohibition against suit so succinctly set out in the above constitutional provision relates not only to the State of West Virginia but extends to an agency of the state to which it has delegated performance of certain of its duties. *The City of Charleston* v. *Southeastern Construction Company,* 134 W. Va. 666, 64 S. E.2d 676; *Hamill* v. *Koontz,* 134 W. Va. 439, 59 S. E.2d 879; *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E.2d 609, 9 A.L.R.2d 1284; *Stewart* v. *The State Road Commission of West Virginia,* 117 W. Va. 352, 185 S. E. 567; *Mahone* v. *The State Road Commission of West Virginia,* 99 W. Va. 397, 129 S. E. 320; *Barber* v. *Spencer State Hospital,* 95 W. Va. 463, 121 S. E. 497; *The Miller Supply Company* v. *State Board of Control,* 72 W. Va. 524, 78 S. E. 672.

Whether the State Soil Conservation Committee is such an agency of the state as to enjoy the aforesaid constitutional immunity from suit depends upon the statute which created it and the functions performed by it under said statute. Code, 1931, 19-21A-4, as amended, provides: ".(a) There is hereby established, to serve as an agency of the State and to perform the functions conferred upon it in this article, the State soil conservation committee. * * *."

This statute further provides that the Committee shall consist of seven members, four of whom serve by virtue of the state office each holds and three of whom are representative citizens appointed by the Governor. The Committee may call upon the Attorney General of the state for such legal services as it may require. It may, in the performance of its functions, request and receive, under available appropriations, assistance from state agencies and state institutions of learning. A further examination of the aforesaid statute clearly reveals that the

functions of the Committee are statewide in nature. It is a direct governmental agency of the state. When it acts, it acts for the state in the administration of state affairs. Funds for the operation of the business of the Committee are appropriated and made available to it by the legislature. Considering the legislative determinations and declaration of policy contained in Code, 1931, 19-21A-2, as amended, and the further provisions of said Article 21A, it becomes eminently clear that the State Soil Conservation Committee is an arm of the state, acting in its behalf, and is therefore immune from suit by reason of Article VI, Section 35 of the Constitution of West Virginia.

Since we have found that the Committee cannot be sued, thereby answering the first certified question in the affirmative, it becomes unnecessary to answer the second question which relates to the venue of an action against such Committee.

The next question for determination is whether the Potomac Valley Soil Conservation District is immune from suit under the provisions of Article VI, Section 35 of the Constitution of West Virginia. Again, as we did in answering this question in relation to the State Soil Conservation Committee, we must consider the pertinent constitutional provision quoted in part above. Also, we must look to the statute under which such districts are established and to those which prescribe their powers, functions and duties.

The creation of soil conservation districts is provided for in Code, 1931, 19-21A-5, as amended. Therein, the legislature has said: " (a) Any twenty-five owners of land lying within the limits of the territory proposed to be organized into a district may file a petition with the State soil conservation committee asking that a soil conservation district be organized to function in the territory described in the petition." The localized nature of a soil conservation district is most apparent. The above quoted

language requires that the establishment of a district be initiated by landowners within the territory proposed to be a district; also, it specifically provides that the district shall function only in the territory described in the petition. Nothing in this section or in any section of the Code pertaining to soil conservation districts indicates that such districts function on a state-wide scale.

Further examination of said Section 5 reveals that the creation of a soil conservation district is wholly within the discretion of the State Soil Conservation Committee. The Committee holds a hearing to determine the need for a district. If that determination is favorable it then, after due notice, holds a referendum within the area of the proposed district, at which all owners of land lying therein shall be eligible to vote for or against the creation of a soil conservation district. The Committee, upon determining whether the operation of such district is administratively practicable and feasible may grant or deny the petition. Thereafter, if the petition is granted, upon compliance with all of the statutory requirements, the supervisors of the district apply for and obtain from the Secretary of State a certificate of the due organization of said district.

The governing body shall consist of the supervisors, two of whom are appointed by the Committee and the remainder of whom are elected from the district as prescribed in Code, 1931, 19-21A-6, as amended. All supervisors must be legal residents and landowners of the district. A soil conservation district has the power to conduct within the district surveys, investigations and research; to conduct demonstrational projects within the district; to carry out preventive and control measures and works of improvement within the district; to obtain land, institute condemnation proceedings; to sue and be sued in the name of the district; and to perform many other endeavors in an effort to accomplish the purposes set forth by the legislature in its declaration of policy. See Code, 1931, 19-21A-2, as amended.

While soil conservation districts are authorized by statute, no specific district is created by the legislature. In the instant case, for example, the Potomac Valley Soil Conservation District was not created by the legislature, but rather was established and is existing by virtue of the provisions of Code, 1931, 19-21A-5, et seq., as amended. A district can be discontinued, not by an act of the legislature, but by petition of landowners of the district, as prescribed in Code, 1931, 19-21A-14, as amended.

The manner in which a soil conservation district obtains financing is not clear. However, an examination of the appropriate statutes and of the appropriations of the legislature clearly reveals that that body does not provide any funds directly to such districts. While the Committee pays certain expenses incurred by the district, such payments appear to be matters of grace.

It is interesting to note the definition of "state agency" contained in Code, 1931, 14-2-3, as amended, relating to claims against the state. Therein the following is found: " 'State agency' means a State department, board, commission, institution, or other administrative agency of State government: Provided, that a 'State agency' shall not be considered to include county courts, county boards of education, municipalities, or any other political or local subdivision of the State regardless of any State aid that might be provided." It follows that those entities listed in the proviso in the above definition are not state agencies and can be sued. Certainly a soil conservation district has no greater standing in the governmental structure than that of a political or local subdivision.

All of the matters discussed herein, in relation to a soil conservation district, reveal that such a district is local in nature, that its jurisdiction is confined to a specified area of the state and that it has no attributes of a state agency. We are of the opinion, therefore, that such entity is not immune from suit under the provisions of Article VI, Section 35 of the Constitution and we answer the third certified question in the negative.

It now devolves upon us to determine the proper venue for an action against the Potomac Valley Soil Conservation District. It is the contention of the appellees that, if such suit can be maintained, the proper venue is in the Circuit Court of Kanawha County as provided in Code, 1931, 14-2-2, as amended. The appellants assert that the action can be maintained in the Circuit Court of Mineral County, the county wherein the real estate is located.

It may be said generally that venue for a cause of action lies in the proper court of the county wherein the cause of action arose or in the county wherein the defendant resides. For specific statutory provisions on venue see Code, 1931, 56-1-1 and 56-1-2. A further statute on venue is Code, 1931, 14-2-2, as amended, which reads as follows:

> "The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha county:
>
> "1.   Any suit in which the governor, any other State officer, or a State agency is made a party defendant, except as garnishee or suggestee.
>
> "2.   Any suit attempting to enjoin or otherwise suspend or affect a judgment or decree on behalf of the State obtained in any circuit court.
>
> "This section shall apply only to such proceedings as are not prohibited by the constitutional immunity of the State from suit under section 35, article VI of the Constitution of the State."

The plain language of this statute clearly states that any suit which can be maintained against the Governor, any other state officer or a state agency shall be brought and prosecuted only in the Circuit Court of Kanawha County. It follows that in actions or suits wherein other than those specifically designated above are defendants, venue is determined in accordance with the provisions of Code, 1931, 56-1-1 and 2. In the instant case the defendant is the Potomac Valley Soil Conservation District,

not the Governor, not any other state officer and not, as we have herein found, a state agency. As stated in *Davis v. West Virginia Bridge Commission,* 113 W. Va. 110, 166 S. E. 819, "The manifest purpose of the statute is to prevent the great inconvenience and possible public detriment that would attend if functionaries of the state government should be required to defend official conduct and state's property interests in sections of the commonwealth remote from the capital."

In the case under consideration the supervisors of the District, its governing body, are required by law to be residents of the area comprising such District. The subject matter of the proceeding is located in that area. No officer based at the seat of state government is a party or in any way directly involved in the proceeding against the District. Consequently, no reason exists for the application of Code, 1931, 14-2-2, as amended. We hold, therefore, that this action may be maintained against the District in the Circuit Court of Mineral County.

We have read and considered questions numbered 5 and 6 and are of the opinion that neither is properly certifiable. See Code, 1931, 58-5-2, as amended. For the reasons stated herein the rulings of the Circuit Court of Mineral County are affirmed.

*Affirmed.*