389 S.E.2d 739

**Walter C. BLOWER**

v.

**WEST VIRGINIA EDUCATIONAL BROADCASTING AUTHORITY.**

No. 19154.

Supreme Court of Appeals of West Virginia.

Jan. 26, 1990.

George A. Stolze, Huntington, for Walter C. Blower.

Basil R. Legg, Asst. Atty. Gen., Charleston, for West Virginia Educational Broadcasting Authority.

MILLER, Justice:

The certified question posed in this case is whether the West Virginia Educational Broadcasting Authority (EBA) is a state agency and thus subject to the special venue provisions of W.Va.Code, 14–2–2(a)(1) (1976).[1] This question arose when a former employee of EBA sued for back wages in the Circuit Court of Cabell County. EBA filed a motion to dismiss the suit on the basis of improper venue. The circuit court refused to dismiss the action, holding that EBA was not a state agency and then certifying the question to this Court.

The parties agree that if EBA is a state agency, W.Va.Code, 14–2–2, requires that the suit be brought in Kanawha County. We have not previously had occasion to formulate a test on what constitutes a state agency under W.Va.Code, 14–2–2. In *Hesse v. State Soil Conservation Comm.,* 153 W.Va. 111, 168 S.E.2d 293 (1969), which involved a situation somewhat analogous to the instant case, we set forth criteria for ascertaining what is a state agency for purposes of obtaining immunity from suit under Article VI, Section 35 of the West Virginia Constitution. This section provides that the "State of West Virginia shall never be made defendant in any court of

---

1. W.Va.Code, 14–2–2, provides, in pertinent part: "(a) The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha county: (1) Any suit in which the governor, any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee."

law or equity." [2] As we explained in *Hesse*, this immunity "relates not only to the State of West Virginia but extends to an agency of the state to which it has delegated performance of certain of its duties." 153 W.Va. at 115, 168 S.E.2d at 295. (Citations omitted).

In *Hesse*, we addressed whether the State Soil Conservation Committee (the Committee) was a state agency so as to enjoy immunity from suit. We began our analysis by explaining that whether an organization is a state agency "depends upon the statute which created it and the functions performed by it under said statute." 153 W.Va. at 115, 168 S.E.2d at 295–96. We noted that W.Va.Code, 19–21A–4(a), the statute which created the Committee, contained language that the Committee was "established, to serve as an agency of the State and to perform the functions conferred upon it in this article[.]" 153 W.Va. at 115, 168 S.E.2d at 296.

We also examined in *Hesse* the legislative framework which created the entity. We found that the Committee's enabling act provided that of the seven members of its governing committee, four were to be state office holders and the others were to be appointed by the governor. Reference was made in *Hesse* to W.Va.Code, 19–21A–4(b), which allows the Committee to "request and receive, under available appropriations, assistance from state agencies and state institutions of learning." 153 W.Va. at 115, 168 S.E.2d at 296. In addition to the receipt of state funds, we found that the Committee's operations were "statewide in nature." 153 W.Va. at 116, 168 S.E.2d at 296.

In *Ohio Valley Contractors v. Board of Educ. of Wetzel County*, 170 W.Va. 240, 241, 293 S.E.2d 437, 438 (1982), another case involving the state's constitutional immunity, we summarized factors that identify an entity as a state agency:

"Factors to consider are whether the body functions statewide, *Hesse, supra;* whether it does the State's work, *City of Morgantown [v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969)]; whether it was created by an act of the Legislature, *Woodford v. Glenville State College Housing Corp.,* [159] W.Va. [442], 225 S.E.2d 671 (1976); whether it is subject to local control, *Hesse, supra,* Syllabus Point 3; and its financial dependence on State coffers, *Boggs [v. Board of Educ. of Clay County,* 161 W.Va. 471, 475], 244 S.E.2d [799] at 802 [ (1978), *overruled on other grounds, Ohio Valley Contractors v. Board of Educ. of Wetzel County, supra* ]."

*See also Pittsburgh Elevator Co. v. West Virginia Bd. of Regents,* 172 W.Va. 743, 755 n. 10, 310 S.E.2d 675, 687 n. 10 (1983).

■ Thus, from our prior cases determining whether a particular organization is a state agency, we have examined its legislative framework. In particular, we look to see if its powers are substantially created by the legislature, and whether its governing board's composition is prescribed by the legislature. Other significant factors are whether it can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury.[3]

As we pointed out earlier, these cases dealt with what is a state agency for purposes of determining whether the entity is entitled to constitutional immunity. W.Va. Const. art. VI, § 35.[4] We see no reason

---

**2.** The full text of Article VI, Section 35 of the West Virginia Constitution provides:

"The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

**3.** These two latter factors were deemed of importance in *City of Morgantown v. Ducker,* 153

W.Va. 121, 168 S.E.2d 298 (1969) (Board of Governors of West Virginia University is a state agency). *See also City of Charleston v. Southeastern Constr. Co.,* 134 W.Va. 666, 64 S.E.2d 676 (1950) (State Office Building Commission is a state agency).

**4.** In *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 296, 359 S.E.2d 124, 129 (1987), we explained that the purpose of constitutional immunity "is to prevent the diversion of State monies from legislatively appropriated purposes." In *Ables v. Mooney,* 164 W.Va. 19, 264 S.E.2d 424 (1979),

why the same test should not apply to determine whether an organization is a state agency for purposes of the venue provisions of W.Va.Code, 14–2–2.

The two concepts are closely entwined,[5] and other jurisdictions have applied similar factors in determining whether a given entity should be deemed a state agency under a variety of different contexts. *E.g., Gocheff v. State Community College of East St. Louis*, 69 Ill.App.3d 178, 25 Ill.Dec 477, 386 N.E.2d 1141 (1979) (whether employee of state community college was immune from suit); *State v. Smith*, 357 So.2d 505 (La.1978) (whether a private nonprofit corporation was a state agency so as to subject its employees to removal under a state malfeasance statute); *Commissioner of Ins. v. Advisory Bd. of Michigan State Accident Fund*, 173 Mich.App. 566, 434 N.W.2d 433 (1988) (whether State Accident Fund was a state agency for purposes of civil service jurisdiction); *Fuchilla v. Layman*, 109 N.J. 319, 537 A.2d 652, *cert. denied*, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (whether organization was alter ego of the state and, thus, immune from suit for purposes of 42 U.S.C.A. § 1983).

 When we apply these factors to the EBA, we find that it is a public agency. First, the legislative findings that serve as a preamble to its creation acknowledge that "it is the duty of this State to provide the best educational training possible ... and that the encouragement and use of non-commercial educational radio, television and related media ... is a proper, necessary and beneficial means of providing ... enriched educational instruction[.]" W.Va. Code, 10–5–1 (1967). This same preamble also speaks of a "coordinated statewide plan."

Pursuant to W.Va.Code, 10–5–2 (1989), the eleven-member governing board of the EBA is composed of four members who are state officials. The other seven members are appointed by the governor with the advice and consent of the senate. W.Va. Code, 10–5–2. This same section designates the office of an executive director and specifies how the director is to be selected. It outlines how the meetings of the EBA shall be called and designates the EBA as a "public benefit corporation." *See* W.Va.Code, 10–5–2.

The powers of the EBA are set out in W.Va.Code, 10–5–3 (1983), and include the right to "acquire in the name of the State ... any property, both real and personal ... necessary to carry out the provisions of this article." W.Va.Code, 10–5–3(5). EBA is also authorized "to apply for and receive appropriations, gifts, bequests or grants from any agency of the United States government [and] any agency of the State of West Virginia." W.Va.Code, 10–5–4 (1967). Furthermore, this section provides that the monies received by the EBA "shall be deposited with the state treasurer of West Virginia." W.Va.Code, 10–5–4. It does not appear to be disputed that the EBA does receive legislative appropriations.

In summary, we find this legislative framework to be comprehensive in not only creating the entity's structure, but in placing its control in the hands of state officials and persons appointed by the governor. EBA is designed to function on a statewide basis; its property is placed in the State's name; it receives state funds; and, its monies are kept in the state treasury. Under these circumstances, we hold that EBA is a public agency and is entitled to the special venue provisions of W.Va.Code, 14–2–2.

Certified question answered and dismissed.

---

we acknowledged that where the suit does not involve a monetary claim against the State, it may not be barred by constitutional immunity.

**5.** In *Hesse,* we referred to W.Va.Code, 14–2–3 (1967), which defines a "state agency" as follows:

"[A] state department, board, commission, institution, or other administrative agency of state government: Provided, that a 'state agency' shall not be considered to include county courts, county boards of education, municipalities, or any other political or local subdivision of this State regardless of any state aid that might be provided."