434 S.E.2d 22

STATE of West Virginia ex rel. WEST VIRGINIA BOARD OF EDUCATION; James J. Maccallum, President; Paul J. Morris, Vice–President; N. Blaine Groves, Secretary; Virgil C. Cook, Member; Audrey S. Horne, Member; Michael D. Greer, Member; Cleo P. Mathews, Member; Patricia Full Hamner, Member; Charles H. Wagoner, Member; and Dr. Henry Marockie, State Superintendent of Schools, Relators,

v.

Honorable Roger L. PERRY, Judge of the Circuit Court of Logan County; Paul Burgess, Larry R. Bartram, Debra A. Grimes, Jerry Aleshire, Debbie Pickett, Ella Smutko, Diann Lynn Kish, and Christa Dawn Bias, Respondents.

No. 21697.

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1993.

Decided July 16, 1993.

Darrell V. McGraw, Jr., Atty. Gen., Katherine A. Schultz, Deputy Atty. Gen., Brentz Thompson, Asst. Atty. Gen., Charleston, for relators.

Thomas E. Esposito, Esposito & Esposito, Logan, Mark Hobbs, Pros. Atty. for Logan County, Logan, for respondents.

MILLER, Justice:

We granted a rule to show cause in this original proceeding in prohibition at the request of the relators, the West Virginia Board of Education (WVBE) and its members, who claim that the respondent trial

judge exceeded his jurisdiction in determining that the Circuit Court of Logan County had venue to hear the underlying suit. The relators assert that the WVBE is a state agency and that they are state officers and, thus, under W.Va.Code, 14–2–2 (1976), the only proper venue for the underlying action is the Circuit Court of Kanawha County.[1] The relevant portion of W.Va.Code, 14–2–2(a)(1) (1976), states: "(a) The following proceedings shall be brought and prosecuted *only* in the circuit court of Kanawha county: (1) Any suit in which the governor, any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee." (Emphasis added).

This prohibition suit had its genesis in a school consolidation and closure plan that was prepared by the Superintendent and Board of Education of Logan County. At that time, the WVBE had assumed control of the Logan County school system pursuant to W.Va.Code, 18–2E–5(g) (1990).[2] After the local board held a public meeting on March 22, 1993, concerning the closure plan, the plan was forwarded to the WVBE. The WVBE, at a March 24, 1993 meeting, approved the closure of Sharples Junior–Senior High School for grades 9 through 12, but retained grades 7 and 8 at the school.

Subsequently, several citizens filed suit in the Circuit Court of Logan County seeking to set aside the decision of the WVBE closing Sharples School for grades 9 through 12. Intertwined in their suit is the argument that the WVBE had no authority to make this decision. This argument is primarily premised upon the contention that the decision by the WVBE to assume control of the Logan County school system under W.Va.Code, 18–2E–5(g), was improper or, at the least, did not extend to closing Sharples School.

After the filing of the citizens' suit in the Circuit Court of Logan County, the WVBE and its members moved to dismiss the suit, contending that the venue was improper. The circuit court refused to grant the motion to dismiss. The WVBE and its members then filed the instant petition for a writ of prohibition in this Court. Thus, we are concerned only with the procedural question of whether the Logan County Circuit Court has venue to hear the suit against the WVBE.

■ At the trial level, the circuit court, in its April 23, 1993 order, determined that "these pleadings constitute a petition of Writ of Certiorari, which petition prays for this Court to review the decision of the State Board of Education to intervene in the operation of the Logan County school system pursuant to Code, 18–2E–5." The foregoing theory propounded by the trial court is not pursued by the respondents in this prohibition suit.[3]

---

1. There appears to be no dispute between the parties that the WVBE is a state agency and its members are state officials. *See* W.Va.Code, 18–2–1 (1989). Certainly, they meet the test we established in Syllabus Point 1 of *Blower v. West Virginia Educational Broadcasting Authority*, 182 W.Va. 528, 389 S.E.2d 739 (1990):

   "In determining whether a particular organization is a state agency, we will examine its legislative framework. In particular, we look to see if its powers are substantially created by the legislature and whether its governing board's composition is prescribed by the legislature. Other significant factors are whether the organization can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury."

2. W.Va.Code, 18–2E–5(g), provides:

   "Whenever nonapproval status is given to a district, the state board of education shall declare a state of emergency in the district and may intervene in the operation of the district to (1) limit the authority of the district superintendent and district board of education as to the expenditure of funds, the employment and dismissal of personnel, the establishment and operation of the school calendar, the establishment of instructional programs and policies, and such other areas as may be designated by the state board by rule, (2) take such direct action as may be necessary to correct the impairment and (3) declare that the office of the district superintendent is vacant."

3. Even if the respondents adopted the trial court's theory, we would find that a writ of certiorari could not be used to attack the actions of the WVBE as to its August 1, 1992 order. The writ would be barred for several reasons. First, under Syllabus Point 3 of *State ex rel. Gibson v. Pizzino*, 164 W.Va. 749, 266 S.E.2d 122 (1979), "an application for a writ of certiorari

During arguments before this Court, the respondents did not assert that the underlying suit was in the nature of a writ of certiorari. Instead, the respondents argue that the actions of the WVBE on March 24, 1993, ordering that the senior high school portion of Sharples School be closed for the 1993–1994 school year, may be administratively reviewed. The respondents contend that the underlying suit is a contested case under our Administrative Procedures Act (APA), W.Va.Code, 29A–5–1, *et seq.*, and, therefore, that they have the right to an administrative review in the Circuit Court of Logan County. Specifically, the respondents rely on W.Va.Code, 29A–5–4(b) (1964), which permits judicial review of a contested case to "be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha county, West Virginia, ... or in the circuit court of the county in which the petitioner or any one of the petitioners resides[.]" [4]

We do not agree, however, with the respondents' premise that the underlying suit is a "contested case," as that term is defined by W.Va.Code, 29A–1–2(b) (1982), which states:

"'Contested case' means a proceeding before an agency in which the legal rights, duties, interests or privileges of specific parties are required by law or

constitutional right to be determined after an agency hearing, but does not include cases in which an agency issues a license, permit or certificate after an examination to test the knowledge or ability of the applicant where the controversy concerns whether the examination was fair or whether the applicant passed the examination and does not include rule making[.]"

■ Our APA, W.Va.Code, 29A–1–2(b), defines a contested case before an agency as a proceeding that involves legal rights, duties, interests, or privileges of specific parties which are required by law or constitutional right to be determined after an agency hearing. Thus, an agency must either be required by some statutory provision or administrative rule to have hearings or the specific right affected by the agency must be constitutionally protected such that a hearing is required.

■ In other words, the provisions in W.Va.Code, 29A–5–1, *et seq.*, outlining the procedure for hearing contested cases do not create substantive rights, as such rights must exist either by statutory language creating an agency hearing, by the agency's rules and regulations,[5] or by some constitutional command. These ·statutory and regulatory sources for finding the

---

must be filed within four months from the date of the final administrative order of the State Superintendent of Schools." The underlying suit in this case was not filed within four months of the final administrative order. *See also Bowers v. Bowyer,* 172 W.Va. 713, 310 S.E.2d 474 (1983). A second reason for refusing the certiorari argument is that the August 1, 1992, order taking over the Logan County school system gave the Logan County school board the right to an administrative hearing before the WVBE. Our general rule is that it is necessary to exhaust all administrative remedies before a court will act. *See, e.g.,* Syl.Pt. 1, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985); Syl.Pt. 1, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984). Finally, it appears that the Logan County school board waived its rights to the administrative hearing on the August 1, 1992 order of the WVBE. The respondents, in their second amended complaint, state that the local board "voted 3–2 not to appeal the matters set forth in the notice," i.e., the August 1, 1992, takeover order.

**4.** The full text of W.Va.Code, 29A–5–4(b), states:

"Proceedings for review shall be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha county, West Virginia, or with the judge thereof in vaction [*sic*], or in the circuit court of the county in which the petitioner or any one of the petitioners resides or does business, or with the judge thereof in vacation, within thirty days after the date upon which such party received notice of the final order or decision of the agency. A copy of the petition shall be served upon the agency and all other parties of record by registered or certified mail. The petition shall state whether the appeal is taken on questions of law or questions of fact, or both. No appeal bond shall be required to effect any such appeal."

**5.** We have recognized that an administrative agency by its rules and regulations may extend hearing rights which must be followed. *See, e.g., Mason County Bd. of Educ. v. State Supt.,* 170 W.Va. 632, 295 S.E.2d 719 (1982); *State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981); *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977).

**666**

right to an administrative hearing are recognized in our traditional rule regarding exhaustion of administrative remedies, as set out in Syllabus Point 4 of *Mounts v. Chafin,* 186 W.Va. 156, 411 S.E.2d 481 (1991):

> " ' " 'The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.' Syl.Pt. 1, *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958)." Syl.Pt. 1, *Cowie v. Roberts,* [173 W.Va. 64], 312 S.E.2d 35 (1984).' Syllabus Point 1, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985)."

Our interpretation of the contested case language of our APA is consistent with that of the United States Supreme Court in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), which concluded that the federal APA did not confer substantive jurisdiction: "We thus conclude that the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." 430 U.S. at 107, 97 S.Ct. at 985, 51 L.Ed.2d at 200–01.

In the context of a school closure case, the Maryland Court of Special Appeals in *Elprin v. Howard County Board of Education,* 57 Md.App. 458, 470 A.2d 833 (1984), examined an issue similar to that in the case before us. In *Elprin,* certain citizens took issue with the local school board's decision to close two schools. The citizens asked the state board of education to review the local board's decision "under its bylaws on school closing." 57 Md.App. at 462, 470 A.2d at 835. The decision was reviewed and the state board affirmed it without affording the citizens a hearing.

The citizens then sought relief in the circuit court under the Maryland APA.

The circuit judge granted the state board's motion to dismiss based on the claim that the court lacked subject matter jurisdiction as the proceeding did not involve a contested case under the Maryland APA. On appeal, the circuit court was affirmed. The Court of Special Appeals began by noting the definition of a contested case under the Maryland APA. Maryland's statutory language was quite similar to ours.[6] The *Elprin* court then came to this conclusion:

> "The right to seek judicial review of a final action of a State administrative agency under [Md.Code Ann. 41] § 255, [the Maryland APA,] other than by mandamus, is available only when that decision determines the legal rights, duties, or privileges of specific parties which have been determined by the State agency after a hearing required by law or constitutional right." 57 Md.App. at 463, 470 A.2d at 835.

Much the same result was reached by the Wyoming Supreme Court in *Lund v. Schrader,* 492 P.2d 202 (Wyo.1971). There, certain citizens appealed a lower court judgment involving the consolidation of their school district which was approved by Wyoming's state committee on education. One of the arguments advanced therein was that the state committee had not held hearings in compliance with Wyoming's APA. The Wyoming APA contained a contested case provision and a definitional section similar to our own.[7] The *Lund* court, citing to its earlier case of *Scarlett v. Town Council, Town of Jackson,* 463 P.2d 26 (Wyo.1969), came to the following conclusion:

> "In the *Scarlett* case we said, when the legislature defined a contested case as a proceeding in which legal rights,

---

6. The court in *Elprin,* 57 Md.App. at 463, 470 A.2d at 835, quoted this portion of the statute: "Section 244(c) defines a 'contested case' as a 'proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.' "

7. The Wyoming court quoted this portion of its contested case definition: " ' "*Contested case*" means a proceeding * * * in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing.' " 492 P.2d at 209.

duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, we would construe the phrase 'after an opportunity for hearing' to mean after an opportunity for a trial-type hearing.

"We find nothing in the Wyoming School District Organization Law of 1969 which suggests the holding of trial-type hearings by either the county committee or state committee. As far as the state committee is concerned, it merely determines whether the plan of organization submitted by the county committee complies with the school district organization law by conforming to the criteria and procedures specified in such law." 492 P.2d at 209.

We are not cited nor have we found any statutory or administrative rule that requires a formal hearing before the WVBE when it acts on a school closure plan adopted by a local board of education. Our chief case dealing with the power of the WVBE to approve, alter, or reject a local school board's plan is *Board of Education of Kanawha County v. West Virginia Board of Education*, 184 W.Va. 1, 399 S.E.2d 31 (1990). In that case, the Kanawha County Board of Education (KCBE) decided to close a junior high school as part of a larger consolidation plan. The WVBE reviewed the plan and determined that the closure was not warranted. The KCBE challenged the disapproval by bringing a mandamus action in the Circuit Court of Kanawha County. The case was then appealed to this Court. No issue was raised as to a hearing requirement before the WVBE on its decision to alter the closing and consolidation plan.

The sole issue was whether the WVBE had authority to modify a local school board's closure plan. We found that the WVBE did have such authority even though the school closure statutes, W.Va. Code, 18–5–13 (1990), and 18–5–13a (1991), did not expressly so provide. A provision in Section 13a required such closure or consolidation to conform to the regulations of the WVBE.[8] We were cited in *Board of Education of Kanawha County* the WVBE's regulation on school closure or consolidation[9] and came to this conclusion in Syllabus Point 1:

"County boards of education do not have unlimited power to make the final decisions with respect to school closings and consolidations. The plain language of W.Va.Code, 18–5–13 (1990) and W.Va. Code, 18–5–13a reflects that such decisions may be rejected where they fail to comply with statutory provisions or West Virginia Board of Education regulations."

█ The point that bears emphasizing in the instant case is that neither the statutes relating to the closing or consolidation of schools nor the WVBE regulations mandate that the WVBE hold an administrative hearing before determining whether to accept, modify, or reject a local board of education's plan to close or consolidate its schools.[10] In the absence of such a right to

---

**8.** The relevant language in W.Va.Code, 18–5–13a(2), provides: "Any such proposal to close or consolidate any school by any county board of education shall be further subject to any current rules and regulations of the state board of education relating to school closing or consolidation[.]"

**9.** This statement was made in *Board of Education of Kanawha County,* 184 W.Va. at 5, 399 S.E.2d at 35:

"Pursuant to W.Va.Code, 18–5–13a, it has promulgated rules and regulations relating to school closings and consolidations. *Handbook on Planning School Facilities (Policy No. 6200),* 126 W.Va.C.S.R. § 126–172–1, *et seq.* Section 105.07 of these regulations contains the following provision:

"The West Virginia Board of Education will *not* overrule a county board of education on a school closing or consolidation matter, unless the proposal does not comply with the educational and facility standards established by the State Board or the county board has not complied with procedural requirements of 18–5–13, 18–5–13a, and State Board Policy. (Emphasis in original)."

**10.** We have not found any case that gives citizens of a local school district a constitutional right to challenge a school consolidation and closure plan in the absence of any claim of racial discrimination or other constitutionally protected status. *See Board of Educ. v. Pico,* 457 U.S. 853, 866, 102 S.Ct. 2799, 2807–08, 73 L.Ed.2d 435, 446 (1982) ("[C]ourts should not 'intervene in the resolution of conflicts which

a hearing, a contested case does not arise under the APA.[11] Thus, the respondents are not entitled to utilize the APA in order to bring this suit in the Circuit Court of Logan County.

Although they may not utilize the APA, it does not follow that the respondents are without a remedy. We recognized in *Board of Education of Kanawha County, supra,* that a local board of education could challenge a decision of the WVBE in a mandamus action when asserting that a decision of the WVBE was arbitrary and unreasonable:

"As we noted in Syllabus Point 1 of *Detch v. Board of Education,* 145 W.Va. 722, 117 S.E.2d 138 (1960):

'The determination of the educational policies of the public schools of the State is vested in The West Virginia Board of Education, and, unless unreasonable or arbitrary, its actions relating to such policies will not be controlled by the courts.'" 184 W.Va. at 5, 399 S.E.2d at 35.

■ More recently in *Pell v. Board of Education of Monroe County,* 188 W.Va. 718, 426 S.E.2d 510 (1992), local citizens challenged the actions of their local board of education in regard to a consolidation plan. We recognized that such a challenge could be brought in a mandamus proceeding if the requirements set out in Syllabus Point 1 of *Pell* were met:

" 'Mandamus will lie to control a board of education in the exercise of its discretion upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of the law.' Syl. pt. 4, *Dillon v. Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986)."

arise in the daily operation of school systems' unless 'basic constitutional values' are 'directly and sharply implicate[d]' in those conflicts." *Citing Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228, 234 (1991).)

**11.** We did state in Syllabus Point 4 of *Board of Education of Kanawha County, supra,* that the WVBE is required to give reasons when it rejects a local board of education's decision to close or consolidate schools:

*See also Haynes v. Board of Educ.,* 181 W.Va. 435, 383 S.E.2d 67 (1989).

■ Certainly, in the instant situation, where it is asserted by the respondents that the local school board was to some degree controlled by a superintendent placed in office by the WVBE pursuant to W.Va.Code, 18–2E–5(g),[12] we believe that local citizens may have the right to bring a mandamus action against the WVBE to challenge the decision of the WVBE to close the senior high grades of Sharples School as being an arbitrary, unreasonable, and capricious action.

■ However, it is equally clear that such a mandamus action must be brought in the Circuit Court of Kanawha County because the WVBE and its members constitute a public agency, and public officials are entitled to the benefit of the venue provisions of W.Va.Code, 14–2–2. This point was settled in *Thomas v. Board of Education, County of McDowell,* 167 W.Va. 911, 280 S.E.2d 816 (1981). There, the local board of education attempted to bring a third-party action against the WVBE in McDowell County. We stated in Syllabus Point 2 of *Thomas:*

"Actions wherein a state agency or official is named, whether as principal party or third-party defendant, may be brought only in the Circuit Court of Kanawha County."

■ Moreover, we have utilized a writ of prohibition to preclude a court from proceeding to hear a case where the venue is improper under W.Va.Code, 14–2–2. *See, e.g., Smith v. Maynard,* 186 W.Va. 421, 412 S.E.2d 822 (1991); *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977). The rationale for a writ of prohibi-

"Where the West Virginia Board of Education rejects, in whole or in part, a county board of education's school closure or consolidation plan, it is required to state its reasons for doing so. The State Board need not make detailed findings of fact or conclusions of law, but must give some reason for its action so as to enable a reviewing court to determine if it has abused its discretion."

**12.** See note 2, *supra,* for text of W.Va.Code, 18–2E–5(g).

tion is set out in Syllabus Point 3 of *Smith, supra:*

> "'Prohibition will lie to prohibit a judge from exceeding his legitimate powers.' Syllabus Point 2, *State ex rel. Winter v. MacQueen,* 161 W.Va. 30, 239 S.E.2d 660 (1977)."

*See also Duncil v. Kaufman,* 183 W.Va. 175, 394 S.E.2d 870 (1990); *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984).

For the foregoing reasons, a writ of prohibition is granted prohibiting the respondent judge from acting further in this case.

Writ granted.