IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**September 18, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0233

STATE OF WEST VIRGINIA EX REL.
WEST VIRGINIA REAL ESTATE LICENSING AND CERTIFICATION BOARD,
Petitioner

v.

HONORABLE CHRISTOPHER D. CHILES, JUDGE OF THE CIRCUIT COURT OF
CABELL COUNTY, and DAVID E. BUNCH,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

Submitted: September 10, 2014
Filed: September 18, 2014

Patrick Morrisey, Esq.
Attorney General
Darlene Ratliff Washington, Esq.
Senior Assistant Attorney General
J. Zak Ritchie, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

David E. Bunch
Huntington, West Virginia
*Pro se* Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision of this case.

H. CHARLES CARL, III, JUDGE, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

2.      "Actions wherein a state agency or official is named, whether as principal party or third-party defendant, may be brought only in the Circuit Court of Kanawha County."  Syl. Pt. 2, *Thomas v. Bd. of Educ.*, 167 W.Va. 911, 280 S.E.2d 816

(1981), *disapproved on other grounds by Hansbarger v. Cook*, 177 W.Va. 152, 157 n.5, 351 S.E.2d 65, 70 n. 5 (1986).

3.      "In determining whether a particular organization is a state agency, we will examine its legislative framework.  In particular, we look to see if its powers are substantially created by the legislature and whether its governing board's composition is prescribed by the legislature.  Other significant factors are whether the organization can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury."  Syl. Pt. 1, *Blower v. W.Va. Educ. Broad. Auth.*, 182 W.Va. 528, 389 S.E.2d 739 (1990).

4.      The West Virginia Real Estate Appraiser Licensing and Certification Board is a "state agency" entitled to the special venue provisions of West Virginia Code § 14-2-2(a)(1) (2014).

LOUGHRY, Justice:

The petitioner, the West Virginia Real Estate Licensing and Certification Board (the "Board"), seeks a writ of prohibition[1] to prevent the respondent, the Honorable Christopher D. Chiles,[2] Judge of the Circuit Court of Cabell County, from proceeding on a petition for a writ of prohibition filed by the respondent, David E. Bunch, against the Board in the Circuit Court of Cabell County. The Board contends that it is a state agency and, under state law, venue for any action filed against it is proper only in the Circuit Court of Kanawha County. For the reasons set forth below, we agree with the Board and grant the requested writ.

## I. Factual and Procedural Background

Respondent Bunch is a real estate appraiser holding a license issued by the Board pursuant to the Board's authority as set forth in the Real Estate Appraiser Licensing and Certification Act, West Virginia Code §§ 30-38-1 to -19 (2012 & Supp. 2014). On March 16, 2010, Mr. Bunch filed a petition for a writ of prohibition in the Circuit Court of Cabell County seeking to halt an administrative disciplinary proceeding that the Board had

[1]*See* W.Va. Const. art. VIII, § 3.

[2]The circuit court orders in this case were entered by the Honorable David M. Pancake, who has since retired. Because the case is now assigned to the Honorable Christopher D. Chiles, he is the party respondent herein.

1

previously initiated against him.[3] On the same day that the petition for a writ of prohibition was filed, the circuit court entered an ex parte order enjoining the administrative proceeding pending the conclusion of the circuit court case.

On March 16, 2010, the Board moved to dismiss the circuit court case, arguing, inter alia, that pursuant to West Virginia Code § 14-2-2(a)(1) (2014), venue is proper only in Kanawha County. After receiving briefs and hearing argument from the parties, the circuit court concluded that it is unclear whether the Board is a "state agency" for purposes of this venue statute. Accordingly, by order entered on January 16, 2014, the circuit court denied the Board's motion to dismiss.[4] Thereafter, the Board filed the instant petition asking this Court to issue a writ prohibiting enforcement of the January 16, 2014, order and prohibiting the Circuit Court of Cabell County from conducting any further proceedings in this matter.

## II. Standard for Issuance of Writ of Prohibition

In deciding whether to grant a writ of prohibition in cases where the lower court acted within its jurisdiction but allegedly exceeded its authority, we rely upon the factors set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

[3]The allegations in the administrative proceeding are not presently before this Court.

[4]The circuit court also rejected the Board's argument regarding pre-suit notice to government officials. The Board does not challenge that portion of the circuit court's ruling.

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With these factors in mind, we proceed to determine whether a writ of prohibition should issue.

### III. Discussion

The sole issue in this case is whether the Board is a "state agency" for purposes of the venue statute, West Virginia Code § 14-2-2(a)(1). This statutes provides, "(a) The following proceedings shall be brought and prosecuted only in the Circuit Court of Kanawha County: (1) Any suit in which the Governor, any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee." *Id.* In addition, this Court has held that "[a]ctions wherein a state agency or official is named, whether as principal party or third-party defendant, may be brought only in the Circuit Court of Kanawha County." Syl.

3

Pt. 2, *Thomas v. Bd. of Educ.*, 167 W.Va. 911, 280 S.E.2d 816 (1981), *disapproved on other grounds by Hansbarger v. Cook*, 177 W.Va. 152, 157 n.5, 351 S.E.2d 65, 70 n. 5 (1986). The Board asserts that it is a state agency; thus, venue is only proper in Kanawha County. Mr. Bunch argues that the Board is not a state agency; therefore, the venue provisions of West Virginia Code § 14-2-2(a)(1) do not apply.

In prior cases, "we have utilized a writ of prohibition to preclude a court from proceeding to hear a case where the venue is improper under [West Virginia] Code [§] 14-2-2. *See, e.g., Smith v. Maynard*, 186 W.Va. 421, 412 S.E.2d 822 (1991); *State ex rel. Ritchie v. Triplett*, 160 W.Va. 599, 236 S.E.2d 474 (1977)." *State ex rel. W.Va. Bd. of. Educ. v. Perry*, 189 W.Va. 662, 668, 434 S.E.2d 22, 28 (1993). We have recognized that venue issues may be resolved through a petition for a writ of prohibition to this Court because of "the inadequacy of the relief permitted by appeal[.]" *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 124, 464 S.E.2d 763, 766 (1995); *accord*, *State ex rel. Huffman v. Stephens*, 206 W.Va. 501, 503, 526 S.E.2d 23, 25 (1999); *State ex rel. Thornhill Group, Inc. v. King*, 233 W.Va. 564, ___, 759 S.E.2d 795, 798 (2014). In light of this established jurisprudence, we conclude that this matter is properly before the Court on a petition for a writ of prohibition. Accordingly, we proceed to address the meaning of "state agency" as that term is defined in West Virginia Code § 14-2-3 (2014).

4

Pursuant to West Virginia Code § 14-2-3, "state agency" is defined as

> a state department, board, commission, institution, or other administrative agency of state government: Provided, that a "state agency" shall not be considered to include county courts, county boards of education, municipalities, or any other political or local subdivision of this State regardless of any state aid that might be provided.

Unquestionably, the Board satisfies this definition, which expressly includes the word "board."

Additionally, in syllabus point one of *Blower v. West Virginia Educational Broadcasting Authority*, 182 W.Va. 528, 389 S.E.2d 739 (1990), this Court set forth a test for determining whether an entity is a "state agency" for purposes of West Virginia Code § 14-2-2:

> In determining whether a particular organization is a state agency, we will examine its legislative framework. In particular, we look to see if its powers are substantially created by the legislature and whether its governing board's composition is prescribed by the legislature. Other significant factors are whether the organization can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury.

Thus, the question of whether an organization is a "state agency" is determined by examining the legislative framework underlying that organization. Under *Blower*, the two most important criteria are whether the organization's powers are substantially created by the Legislature and whether its governing board's composition is prescribed by the Legislature.

5

Turning to the case at bar, an examination of the legislative framework underlying the Board's creation makes clear that the first two *Blower* factors are satisfied. As to the first factor, the Board, which was created by West Virginia Code § 30-38-6, implements and enforces the Real Estate Appraiser Licensing and Certification Act and the Appraisals Management Companies Registration Act. W.Va. Code §§ 30-38-1 to -19; W.Va. Code §§ 30-38A-1 to -17 (2012 & Supp. 2014). The Legislature specified the Board's powers to include, inter alia, the power to establish appraiser licensing and certification requirements; to approve or disapprove licenses and certifications; to suspend or revoke the same; and to perform other functions and duties necessary to carry out Articles 38 and 38A of Chapter 30. W.Va. Code § 30-38-7. The Board is one of several professional and occupational licensing boards that the Legislature established in Chapter 30 of the West Virginia Code, and additional powers and duties of the Board are set forth in Article 1, Chapter 30.

A further examination of the legislative framework reveals that the Legislature granted the Board powers that are characteristic of state agencies. For example, the Board has rule-making authority in accordance with the West Virginia Administrative Procedures Act ("APA").[5] W.Va. Code §§ 30-1-8(c), 30-1-8a(b), 30-38-9. When pursuing disciplinary action against the holder of a license, certification, or registration, the Board holds

---

[5]*See* W.Va. Code §§ 29A-3-1 to -18 (2012).

administrative hearings that must comply with the requirements of the contested cases article of the APA.[6] W.Va. Code §§ 30-1-8, 30-38-14, 30-38A-17. The Board's members must take an oath prescribed by the West Virginia Constitution; the Board's officers are required to register annually with the Governor, the Secretary of Administration, the Legislative Auditor, and the Secretary of State; and the Board is required to submit reports to the Governor and the Legislature regarding its transactions. W.Va. Code §§ 30-1-2, 30-1-3(b), 30-1-12(b). The Legislature has specified that "pocket cards" issued by the Board to licenced or certified appraisers "are the property of the State of West Virginia[.]" W.Va. Code § 30-38-7(o). Moreover, the Board's secretary must ensure that the Board's address and telephone number are included "in the State government listings of the Charleston area telephone directory." W.Va. Code § 30-1-12(c).

The second *Blower* factor, which examines whether the governing board's composition is prescribed by the legislature, is equally met. 182 W.Va. at 529, 389 S.E.2d at 740, syl. pt. 1. Under West Virginia Code § 30-38-6(a), the Legislature has provided that Board members be appointed by the Governor with the advice and consent of the Senate. The Legislature has also established residency and qualification requirements for Board members, and it has specified the length of the terms served by Board members. W.Va. Code § 30-38-6(a), -6(b).

---

[6]*See* W.Va. Code §§ 29A-5-1 to -5 (2012).

Having determined that the two primary *Blower* factors have been met, we proceed to consider *Blower's* "other significant factors" for ascertaining whether an organization is a state agency: whether the organization can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury. 182 W.Va. at 529, 389 S.E.2d at 740, syl. pt. 1. Two of these questions can easily be answered in the affirmative. The Board's authority is clearly statewide. In fact, it is unlawful to engage in certain real estate appraisal activities anywhere in West Virginia without obtaining a license, certificate, or registration issued by the Board. W.Va. Code §§ 30-38-1, 30-38-15, 30-38A-1. Furthermore, the Legislature directed that any money the Board receives as fines shall be deposited into the General Revenue Fund of the State Treasury. W.Va. Code § 30-1-10(a). All other money that the Board collects shall be paid into a special fund of the State Treasury that has been established for the Board. *Id.*; W.Va. Code § 30-38-7(q).

The specific dispute presented in this case is whether the Board satisfies the question of whether the organization "is financially dependent on public funds." *Blower*, 182 W.Va. at 529, 389 S.E.2d at 740, syl. pt. 1. Mr. Bunch argues that the Board is not financially dependent on public funds because the Board supports itself using money that it

8

collects.[7]  He argues that the failure to meet this single factor of the *Blower* test means that

the Board is not a state agency.  We disagree with both assertions.

First, after reviewing the statutory framework that established the Board's

funding scheme, we conclude that this portion of the *Blower* test is satisfied.  Nothing in

*Blower* requires that the public funds be appropriated directly from the State Treasury or the

---

[7]West Virginia Code § 30-1-10(a), which applies to all Chapter 30 boards, provides as follows:

> The secretary of every board referred to in this chapter shall receive and account for all money which it derives pursuant to the provisions of this chapter which are applicable to it.  With the exception of money received as fines, each board shall pay all money which is collected into a separate special fund of the State Treasury which has been established for each board.  This money shall be used exclusively by each board for purposes of administration and enforcement of its duties pursuant to this chapter.  Any money received as fines shall be deposited into the General Revenue Fund of the State Treasury.  When the special fund of any board accumulates to an amount which exceeds twice the annual budget of the board or ten thousand dollars, whichever is greater, the excess amount shall be transferred by the State Treasurer to the State General Revenue Fund.

Correspondingly, West Virginia Code § 30-38-7(q), which pertains specifically to this Board, provides as follows:

> The board shall . . . (q) Deposit all fees collected by the board to the credit of the West Virginia appraiser licensing and certification board fund established in the office of the State Treasurer. The board shall disburse moneys from the account to pay the cost of board operation. Disbursements from the account may not exceed the moneys credited to it[.]

State's General Revenue Fund. The Board operates by using funds collected pursuant to its statutory authority, which is the same funding mechanism that the Legislature created for this and for other Chapter 30 boards. The Board must account for all money it receives, must remit that money to a special fund of the State Treasury, and is subject to audit by the Legislative Auditor. W.Va. Code §§ 30-1-10(a), 30-1-10(b), 30-38-7(q), 30-38-7(r). All of these statutory provisions indicate that the Board's funds are "public funds" for purposes of the *Blower* test. *See* 182 W.Va. at 529, 389 S.E.2d at 740, syl. pt. 1.

Second, even assuming, arguendo, that the Board was not financially dependent upon public funds, the failure to meet this single factor of the *Blower* test would not render the Board something other than a "state agency." While all of the *Blower* factors are to be examined, we did not hold that all of the factors must be established. Here, the Board overwhelmingly meets all of the other *Blower* factors, including the two factors that are to be examined in particular: whether the board's powers are substantially created by the Legislature and whether its governing board's composition is prescribed by the Legislature. *See* 182 W.Va. at 529, 389 S.E.2d at 740, syl. pt. 1.[8]

[8]Our analysis of this issue is strengthened by considering another case that addressed a closely-related issue. In *Arnold Agency v. West Virginia Lottery Commission*, 206 W.Va. 583, 526 S.E.2d 814 (1999), we were asked to decide whether the West Virginia Lottery Commission is a state agency for purposes of constitutional immunity from suit. Notably, the test set forth in syllabus point one of *Blower* is the same test that is used to determine whether an organization is a state agency for purposes of immunity. *Blower*, 182 W.Va. at

(continued...)

While Mr. Bunch relies upon *Mayo v. The West Virginia Secondary Schools Activities Commission*, 223 W.Va. 88, 672 S.E.2d 224 (2008), to argue that the Board fails the *Blower* test, we disagree. In *Mayo*, we applied the *Blower* factors to conclude that the West Virginia Secondary Schools Activities Commission ("SSAC") is not a state agency.[9] One of the *Blower* factors that the SSAC did not satisfy was the "dependent upon public funds" factor. 223 W.Va. at 96, 672 S.E.2d at 232. The SSAC is funded by membership dues and event admission fees. *Id.* (*citing State ex rel. Manchin v. W.Va. Secondary Sch. Activities Comm'n*, 178 W.Va. 699, 700, 364 S.E.2d 25, 26 (1987) (holding that pursuant to state law, funds received by the SSAC are "quasi-public funds" but are not moneys due the State)).

Upon analysis, *Mayo* is easily distinguished from the case sub judice. First, the SSAC failed to meet most of the *Blower* factors: it was not substantially created by the

---

[8](...continued)
530-31, 389 S.E.2d at 741-42; *Arnold Agency*, 206 W.Va. at 591, 526 S.E.2d at 822. In *Arnold Agency*, the plaintiff argued that the Lottery Commission is not a state agency primarily because it "is financially self-sustaining, and is engage[d] in a proprietary activity intended solely to generate revenue for the State." 206 W.Va at 590, 526 S.E.2d at 821. After examining the constitutional and statutory provisions underlying the Lottery Commission's creation and operations, we concluded that it is entitled to constitutional immunity. In light of other indicia that the Lottery Commission is a state agency, the commission's self-supporting nature was simply not a determinative factor in our decision in *Arnold Agency*.

[9]Although the issue of "state agency" in *Mayo* pertained to an award of attorney's fees, rather than venue, the *Blower* test was applied.

Legislature; the Legislature has no control over the composition of its governing board; its funds are not funds due to the State under specific legislative enactment; and no legislative enactment requires that SSAC funds be deposited into the State treasury. *See Mayo*, 223 W.Va. at 96-97, 672 S.E.2d at 232-233. In fact, the only *Blower* factor present was the fact that the SSAC operates on a statewide basis. 223 W.Va. at 96, 672 S.E.2d at 232. Second, SSAC membership is not compulsory for schools; the SSAC only collects dues from its members who elect to participate in the SSAC system. *Id.* In contrast to the situation in *Mayo*, here, the Board collects licensing, certification, and registration fees from individuals and companies who cannot, by state law, engage in real estate appraisal without first obtaining such license, certification, or registration. The Board collects these fees by virtue of the authority expressly granted to it by the Legislature, and the money is used to carry out the Board's duties as set forth in state law.

Accordingly, upon a thorough and considered examination of the legislative framework under *Blower*, we hold that the West Virginia Real Estate Appraiser Licensing and Certification Board is a "state agency" entitled to the special venue provisions of West Virginia Code § 14-2-2(a)(1). As such, the circuit court exceeded its legitimate authority and committed clear error as a matter of law in allowing this action to proceed in the Circuit Court of Cabell County despite the Board's assertion of improper venue. West Virginia

12

Code § 14-2-2(a)(1) is stated in mandatory terms—proceedings against a state agency "shall" be brought in the Circuit Court of Kanawha County.

## IV. Conclusion

For the foregoing reasons, we find that venue does not lie in the Circuit Court of Cabell County and that the Board is entitled to the requested writ of prohibition. Accordingly, the Circuit Court of Cabell County is hereby prohibited from undertaking any further action in this matter except for entering an order that dismisses the case from the court's docket for lack of venue.[10]

Writ granted.

---

[10]Should Mr. Bunch elect to pursue his action against the Board in the Circuit Court of Kanawha County, we express no opinion on the timeliness or merits of the case.

13